No. 12,238.

## COOK ET AL. *v.* CHURCHMAN ET AL.

STATUTE OF FRAUDS.—*Parol Representations as to Credit of Another.*—Parol representations concerning the character, conduct, credit, ability, trade or dealings of any other person, by one not a party to the transaction, with the intent that such other person shall obtain credit thereby, are within section 6 of the statute of frauds, the same being section 4909, R. S. 1881.

SAME.—*Conspiracy.*—Such representations, made by one so situate for the purpose of enabling another to obtain credit, are equally within the statute, whether made as the result of a conspiracy or not.

SAME.—*Fraudulent Representations Advantageous to Maker.*—Such representations are none the less within the statute for having been fraudulently made, with an expectation that some incidental advantage might flow to the person making them from the credit induced thereby.

SAME.—*Representations as to Particular Property and Assets of Another.*—Parol representations concerning the particular property and assets of another, made with a view to establish the general credit and pecuniary ability of the other, are also within the statute.

From the Marion Superior Court.

*L. B. Swift, C. Byfield* and *L. Howland,* for appellants.

*F. Winter, F. Rand, J. M. Winters, W. D. Bynum* and *A. T. Beck,* for appellees.

MITCHELL, J.—This suit was brought to recover damages for alleged false and fraudulent representations as to the solvency, credit and ability of Thomas Cottrell, by means of which it is charged the plaintiffs were induced to sell and deliver to his son, Thomas G. Cottrell, above nine thousand dollars worth of goods on credit, in reliance upon the written guaranty of Thomas Cottrell.

The amended complaint is in four paragraphs. The first paragraph states that the plaintiffs were in business in the city of New York; that Thomas G. Cottrell, since deceased, was in business in the city of Indianapolis; that the defendant Francis M. Churchman, for more than fifteen years, had been a banker in the city of Indianapolis, as a member of the banking firm of S. A. Fletcher & Co.; that Thomas G. Cottrell

was heavily indebted to S. A. Fletcher & Co.; that he and the defendants Thomas Cottrell and Francis M. Churchman, knowing that the plaintiffs were ignorant of this indebtedness and of the financial ability of Thomas Cottrell, conspired together to fraudulently represent Thomas Cottrell as of good credit and financial standing, and to get the plaintiffs to sell goods to Thomas G. Cottrell upon credit, taking Thomas Cottrell as a guarantor for the payment of the same, with the fraudulent intention of not paying for the goods, but of turning them, or the proceeds thereof, over to S. A. Fletcher & Co.

Pursuant to this conspiracy, Thomas Cottrell, with the consent of his co-conspirators, offered himself to plaintiffs as guarantor of the payment for goods that plaintiffs might sell to Thomas G. Cottrell, and referred plaintiffs to Churchman as a man who would vouch for his credit and solvency; that plaintiffs thereupon applied to Churchman, and he, in pursuance of the conspiracy, falsely and fraudulently, and with intent to cheat plaintiffs out of their goods, represented to plaintiffs that Thomas Cottrell was solvent and of good credit, was the owner of a valuable property, and was amply good above all his indebtedness for the price of the goods; and he fraudulently concealed from plaintiffs that Thomas Cottrell was then heavily indebted to S. A. Fletcher & Co.

The second paragraph differs from the first in charging that the representations concerning the standing of Thomas Cottrell were made by himself, with the knowledge and connivance of Churchman.

The third paragraph differs from the others in charging that Thomas Cottrell, being the father of Thomas G. Cottrell, asked the plaintiffs to sell his son goods on credit, on the father's written guaranty, and to induce plaintiffs to make this arrangement, Thomas Cottrell told them that he was wealthy; that he was the executor of a large estate, the heirs of which wanted money, and he had let them have his notes, which they had endorsed and negotiated; that the notes had been

sued to judgment against him; that these judgments had been paid with his money, and then, instead of being cancelled, had been assigned to S. A. Fletcher & Co.; that instead of being claims against him, as they appeared, these judgments were in reality not liens upon his property, but were large secured claims of his against said estate; that the only valid judgments against him unprovided for amounted to $7,500; that he was the owner of a large property and had abundant means; that he owned a number of pieces of valuable real estate; that he pointed out to plaintiffs valuable pieces of real estate so claimed by him, among the rest a piece on Virginia avenue, and the piece known as the City Hall, in Indianapolis.

Then remarking that defendant Churchman was familiar with all his affairs, he took plaintiffs into the bank of S. A. Fletcher & Co., and, introducing them to Churchman, explained to the latter the guaranty arrangement, and asked him to explain to plaintiffs his (Cottrell's) affairs, and plaintiffs then repeated to Churchman all that Thomas Cottrell had said and done, and asked Churchman whether Cottrell's representations were true, and whether they could safely rely upon his guaranty, and sell his son goods on credit to the extent of $8,000 or $10,000. Churchman answered that the representations were substantially true; that Cottrell was a very honorable and fair-minded man; that under his guaranty plaintiffs would be perfectly safe in selling goods to his son. The complaint further charges that these representations were false, were known to be so by defendants, and were made by them with intent to cheat plaintiffs; that Thomas Cottrell was wholly insolvent, which both defendants knew and concealed from plaintiffs with fraudulent intent; that his insolvency has continued ever since.

The fourth paragraph alleges the proposal of the father to the plaintiffs to take him as guarantor and sell his son goods on credit; the same representations of the father as to his financial condition, the same story about his claims against

an estate, the same representations as to the condition of his property, and the same pointing out of certain pieces; also the same introduction to defendant Churchman, and the same corroboration by him; also the falsity of the representations, the insolvency of Thomas Cottrell, the heavy indebtedness to S. A. Fletcher & Co., the ignorance of plaintiffs, and the knowledge and fraudulent concealment of defendants. This paragraph further says that the plaintiffs, relying on the truth of these representations, entered into the proposed arrangement of guaranty, and under it let Thomas G. Cottrell have goods of the value of $9,202.83, which they lost by reason of the false and fraudulent representations, although they have diligently endeavored to collect payment by judgment and execution against both Cottrells.

In all of the foregoing paragraphs it is averred that Thomas G. Cottrell was heavily indebted to Fletcher & Co., and that they secured a priority over his other creditors by levying executions, and otherwise, on some of the goods obtained from the plaintiffs in the manner alleged.

The defendants separately demurred to each paragraph of the amended complaint. The court, in special term, sustained the demurrers, and the plaintiffs refusing to plead further, judgment was rendered in favor of the defendants for costs. The death of plaintiff John M. Bruce was shown to the court, and the surviving partners, John C. Cook and Russell W. McKee, appealed to the general term, where the judgment of the court in special term was affirmed, and an appeal was taken to this court. The error assigned is that the court in general term erred in affirming the judgment of the court in special term.

It is conceded that all the representations were by parol, and the question argued on both sides, so far as it concerns the defendant Churchman, is, whether the action can be maintained notwithstanding the provisions of section 4909, R. S. 1881, sec. 6 of the statute of frauds. That section provides that " No action shall be maintained, to charge any person by

reason of any representation made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representation be made in writing, and signed by the party to be charged thereby, or by some person thereunto by him legally authorized."

The appellants' argument for a reversal of the judgment below rests primarily on the principle, which has been asserted so often as almost to have become a maxim, that the statute of frauds shall not be used as a cover for fraud.  Their contention is more particularly directed to the maintenance of the propositions, that the statute does not embrace in its protection representations which are tinged with fraud, and which were made with the actual intent to defraud, nor such as relate specifically to the amount or value of property or the actual pecuniary condition of the person concerning whom they are made.  Cases in great number and in infinite variety may be found, and many of them are cited in the brief of counsel, in which, relying on a parol contract, one party, by the part performance of such contract, had so changed his situation that to permit the statute to be interposed to defeat a corresponding right dependent upon the contract, would have resulted in the consummation of a gross fraud.  In all such cases the salutary principle is maintained that the statute of frauds was intended to prevent fraud, and not to be used as a cover under which to perpetrate it.

It is also well settled that where a contract is consummated, under which money or property is obtained, whatever fraudulent representations may have been employed by a party to the contract as a means of inducing it to be made, evidence of such representations can not be excluded by invoking the aid of the statute.

Cases which rest on the doctrine of part performance, and in which contracts otherwise within the statute have been taken out of its operation, can exert no controlling influence on the case we are considering.  Part performance, as ap-

plicable to parties to an invalid contract, is not relevant here. Nor must the distinction be overlooked between those cases in which representations were made by a party to the contract, with a view to induce another to enter into it, and those in which the representations were made by a third person, albeit for a corrupt and dishonest purpose, with the intent that a party to a contract should obtain goods or credit thereby.

Speaking of a statute substantially like that set out above, it was said in *Huntington* v. *Wellington,* 12 Mich. 10: " The representations and assurances here spoken of, are not representations or assurances made by a party to a contract, but by a third person, knowing them to be false, and making them for corrupt and dishonest purposes, to the injury of another. If one seeks information of another, with a view to some future action, and makes such information the basis of his action, and thereby sustains a loss, the statute will not permit him to allege the deception practiced on him by his informant, unless the information he acted on was in writing." It may, therefore, be considered that when representations are made concerning the credit, ability, etc., of another, by one not a party to the transaction, but with the intent that the person concerning whom they are made shall obtain credit upon such representations, then, even though fraudulent, they are nevertheless within the statute.

The complexion to which the averments against the defendant Churchman come is, that in a proposed transaction between the plaintiffs and the Cottrells, he made representations which tended to establish the credit and ability of Thomas Cottrell, with the intent that he should obtain credit therefrom, and be accepted as guarantor for Thomas G. Cottrell.

That the complaint contains averments charging a conspiracy can not affect the question. The purpose of the statute can not be disappointed by the form of the complaint. The necessity that the representations should have been made in

writing is the same where conspiracy is set up as where it is not. Where the action is to recover damages for false representations, made by a stranger to the contract, concerning any of the subjects enumerated in the statute, it must fail, unless the representations were made in writing, duly signed, etc. This must be so whether the representations were made as the result of a conspiracy, and with the intent to perpetrate a fraud, or otherwise. The question of liability must be determined by the inquiry, were the representations made concerning the character, conduct, ability, etc., of "any other person," with the intent that the person concerning whom they were made, should obtain goods on credit thereby? If they were, then, without regard to the fact that they may have been made by a preconcerted arrangement, or that the credit resulting from the fact that they were made inured incidentally to the advantage of the person making them, they are within the protection of the statute.

The true test, whether the cause of action, in whatever form alleged, comes within the statute, is, whether the action can be maintained without proof of the representations, and whether the representations relate to some one or more of the subjects enumerated in the statute, and were made with the purpose to establish the credit or pecuniary ability of another. If such proof is essential, and if when made it establishes representations which relate to the subjects enumerated, then the statute applies. It is immaterial that the person making the representations may have had some design of obtaining an incidental advantage to himself as a result of the credit intended to be secured thereby. "In such case the protection extended by the statute is absolute and complete." *Hunter* v. *Randall,* 62 Maine, 423 (16 Am. R. 490). *Haslock* v. *Fergusson,* 7 Ad. & E. 86.

The statute we are now considering is in all respects the equivalent of what is commonly known as Lord Tenterden's act. This act was introduced to supply a defect, found to exist in the statute of frauds, which was rendered

conspicuous by the decision in *Pasley* v. *Freeman*, 3 T. R. 51.
Notwithstanding the provision that no action should be main-
tained whereby to charge another upon any special promise
to answer for the debt, default or miscarriage of another, un-
less the agreement was in writing, signed, etc., the decision
referred to pointed out a mode of evading the statute, by
shaping the action so as to make it count upon a tort or
wrong by some false or fraudulent representation to the de-
fendant, in order to induce him to contract with another, in-
stead of upon a special promise.   The intent and purpose
of the statute was to cut off all such actions and to place
representations of the character therein referred to upon the
same basis as special promises to answer for the debt of an-
other.   It would hardly be contended that if the action was
to recover on an oral promise to answer for the debt, default
or miscarriage of another, the case could be taken out of the
operation of the statute by averring a conspiracy, or that the
promise was made by preconcert or prearrangement between
two or more.   Nor could the operation of the statute be
avoided by averring that the special promise was fraudulently
made, or that the promisor had some ulterior design looking
to his own advantage in making it.   That the promise was
oral, and that it was to answer for the debt, default or mis-
carriage of another, would be sufficient to end the inquiry.
So, in this case, when it is admitted that the representations
were by parol, that they related to the credit and ability of
a third person, and were made with the intent that money,
goods or credit should be obtained by such third person, the
case falls within the statute, and the motive with which
they were made beyond that of obtaining credit is imma-
terial.

If a case should arise in which it appeared that two or more
persons entered into a conspiracy, the common purpose of
which was to defraud another of his money or goods, or that
some were engaged to assist others in accomplishing a fraudu-
lent or illegal act, then whatever shams or tricks may appear to

have been resorted to, the court will deal with the case as the facts may require. *Breedlove* v. *Bundy,* 96 Ind. 319.

We have, however, no such case here. The gist of the action is to recover damages by reason of false and fraudulent representations, and the fact that conspiracy is alleged does not change the nature of the action or dispense with the kind of proof required by the statute. Conspiracy is not the ground of the action, nor does the cause of action arise from conspiracy, but from the representation and the damage following it. *Bowen* v. *Matheson,* 14 Allen, 499; *Parker* v. *Huntington,* 2 Gray, 124.

All that can be said of the representations, in the aspect in which we are now considering them, is that they make a case in which Churchman, a third person, was applied to by persons who were about to, and did contract with the Cottrells, for information concerning the credit and ability of one of them to pay for goods which they had it in contemplation to sell the other. That it was agreed beforehand that the plaintiffs should be referred to him, and that he should make the representations which he did make, or that the relations of the Cottrells to the firm of Fletcher & Co. were such that the credit extended subsequently resulted to the advantage of Fletcher & Co., in enabling them to secure their debt, can not destroy the effect of the statute. *Mann* v. *Blanchard,* 2 Allen, 386.

Upon this subject a court of high authority said: "Any other object or purpose, wholly distinct from an intent to enable a third person to obtain money, goods or credit, * * can not be considered as of any importance, since the statute expressly declares that no action shall be brought to charge any person - by reason of such representation, unless it be made in writing, and signed," etc. *Kimball* v. *Comstock,* 14 Gray, 508. *Hearn* v. *Waterhouse,* 39 Maine, 96.

Representations as to the character, conduct, credit, ability, trade or dealings of a third person, when the primary purpose for which such representations are made is, not to induce

the extension of credit, or the delivery of money or goods to the person concerning whom they are made, but to secure the execution of a contract to which the person making them is a party, are not within the terms of the statute, and need not be in writing in order to be actionable. *St. John* v. *Hendrickson,* 81 Ind. 350; *Hassinger* v. *Newman,* 83 Ind. 124 (43 Am. R. 64).

When, however, such representations are made with the intent that a third person shall in the first instance obtain credit, money or goods thereupon, in order to give a cause of action against the person who made them, they must be in writing, signed, etc. *Mann* v. *Blanchard, supra; Medbury* v. *Watson,* 6 Met. 246; *Norton* v. *Huxley,* 13 Gray, 285; *Wells* v. *Prince,* 15 Gray, 562; *McKinney* v. *Whiting,* 8 Allen, 207; *Belcher* v. *Costello,* 122 Mass. 189.

Upon the foregoing considerations it must be concluded that the representations set out in the first and second paragraphs of the complaint were nothing more than the expression of opinions by Mr. Churchman concerning the credit and general financial and pecuniary ability of Thomas Cottrell. Being of that character, however unfounded such representations may have been, and whatever other ultimate end may have been in view, since it is averred that they were made " for the purpose of procuring plaintiffs to sell goods to Thomas G. Cottrell upon credit, and to accept Thomas Cottrell as guarantor for the payment of the purchase-money," they come within the terms and spirit of the statute, and are not actionable.

The argument of appellants' counsel which is directed more particularly to the third and fourth paragraphs of the complaint, may now be briefly considered. The contention is, that the representations set out in these paragraphs do not relate to the credit and ability of the person concerning whom they were made, but to the condition, quality and value of his property, and that, therefore, they are not within the protection of the statute. These representations are, in

Cook *et al. v.* Churchman *et al.*

substance, that the elder Cottrell was wealthy; that certain judgments, which were apparently debts against him and liens upon his property, were claims in his favor, and that he owned certain specific parcels of real property which were pointed out; that he was an honorable and fair-minded man, and that under his guaranty the plaintiff would be perfectly safe in selling goods to his son.

Since the exhaustive discussion in *Lyde* v. *Barnard*, 1 M. & W. 101, concerning the policy and purpose of Lord Tenterden's act, and the scope and meaning attributable to it, little remained to be added upon the subjects there discussed. The facts in that case were that the plaintiff had been induced by the defendant to advance a sum of money to a third person on the security of certain dividends of stocks of which he took an assignment. Upon inquiry the defendant represented that the stocks about to be assigned were charged with only three annuities, when the truth was they were, as the defendant well knew, charged with a mortgage of 20,-000*l.* in addition to the three annuities. The point upon which the learned judges, who were equally divided in opinion, disagreed was, whether the representation should be held to relate to the *ability* of the person to whom the money was about to be advanced, or to the state and value of the particular property which it was proposed to assign as security. On the one hand, it was contended that false and fraudulent representations made to one concerning the condition, value and availability of particular property owned by another, with the intent, not to establish the general credit or trustworthiness of the owner, but to induce a loan to him on the security of such property, did not relate to the credit or general pecuniary ability of the owner, but to the condition and value of the particular property, and were, therefore, not within the protection of the statute. As against this, it was contended with great force of reason, that such representations related to the ability of the borrower, and were equally within the mischief intended to be prevented by the statute.

Without further indicating our opinion upon the merits of the discussion, which was maintained with great vigor and ability on both sides, or as to the inclination of the authorities, some of which we have cited, it is sufficient to say that it was agreed on all hands that if the inquiries made by the plaintiff, in that case, had been made as they were in the case before us, for the purpose of ascertaining how far it was safe to trust the intended debtor's personal responsibility, and the representations made by the defendant had been for the purpose of establishing the intended debtor's personal credit and general pecuniary ability, such representations would have been within the statute.

Whatever representations were made by the defendant in this case, in respect to particular property, were not made with the intent to induce any transaction concerning such property. They were directed to the purpose of establishing the alleged owner's general credit and ability to answer the guaranty which was under contemplation. It was not proposed to take a conveyance of, or mortgage upon, the land as a security for the guaranty. The inquiry and representations concerning the real estate, and the liens upon it, had relation to the general pecuniary ability and trustworthiness of the owner, and were made with the intent to obtain general credit for him, and so, within the authority of *Lyde* v. *Barnard, supra,* and all the cases, the protection of the statute is extended over them.

The representations under consideration involve the principles underlying the case of *Swann* v. *Phillips,* 8 A. & E. 457. The facts there were that an attorney, desiring to secure a loan for his client, without other security, represented to the plaintiff that the proposed borrower could safely be trusted for the amount, because the title deeds to a certain estate which he had just bought were in his possession. These representations were false. It was held that as the representations thus made related to the ability of the borrower to pay, they were within the statute.

There is nothing in the suggestion contained in the case of *Hunter* v. *Randall, supra,* which militates against the conclusions already reached. Nor do we think the principles governing the cases of *Bush* v. *Sprague,* 51 Mich. 41, and *Warren* v. *Barker,* 2 Duvall, 155, are in opposition to anything herein determined.

Our conclusion upon the whole matter is:

1. That representations made concerning the character, conduct, credit, ability, etc., of any other person, by one not a party to the transaction, with the intent that such other person shall obtain credit thereby, are within the statute.

2. That such representations, made by one so situate, for the purpose above mentioned, are equally within the statute, whether made as the result of a conspiracy or not.

3. That they are none the less within the statute, for having been fraudulently made, with an expectation that some incidental advantage may flow to the person making them from the credit induced thereby.

4. that representations concerning the particular property and assets of another, when made as above, with a view to establish the general credit and pecuniary ability of the other, are also within the statute.

We are without the aid of a brief on behalf of the appellee Thomas Cottrell, nor is the ruling, so far as it relates to him, made the subject of discussion by the appellants so far as we have observed. We are, therefore, left to conclude that his relation to the case is regarded with indifference by both sides.

We might say that the ground upon which the demurrer on his behalf was sustained is not apparent to us, but as the error assigned upon the ruling as to him is not discussed, we may regard the point as waived.

The judgment is, accordingly, affirmed, with costs.

Filed Dec. 8, 1885.