HEINTZ v. MUELLER.

[No. 2,318.    Filed February 2, 1898.]

PLEADING.—*Construction.*—Where a pleading is uncertain and ambiguous and the theory thereof rendered obscure, it will be construed most strongly against the pleader, and particular expressions will be made to harmonize with the general trend of the meaning of the language of the entire pleading taken as a whole.    *p. 244.*

FRAUD.—*False Representations.*—*Complaint.*—*Statute of Frauds.*—Allegations in a complaint charging that defendant falsely and fraudulently represented to plaintiff that a certain salt mining company was in a prosperous condition, thereby inducing plaintiff to purchase stock in said company, which was issued direct from the company to plaintiff, amount only to charging defendant with statements made for the purpose of establishing the credit of the said company with intent that it should thereby obtain money, and not being made in writing such representations are within the statute of frauds, section 6634, Burns' R. S. 1894 (4909, Horner's R. S. 1897), providing that "no action shall be maintained to charge a person by reason of any representation made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representations be made in writing and signed by the party to be charged thereby or by some person thereunto by him legally authorized."    *pp. 244-248.*

STATUTORY CONSTRUCTION.—*Statute of Frauds.*—The word "person" as used in the statute of frauds, section 6634, Burns' R. S. 1894 (4909, Horner's R. S. 1897), is a generic term and includes both natural and artificial persons.    *p. 247.*

From the Lake Superior Court.    *Reversed.*

*George W. Plummer, Peter Crumpacker* and *Wilber B. Reading,* for appellant.

*Ibach & Ibach* and *Agnew, Kelly & Borders,* for appellee.

BLACK, J.—The appellee's complaint contained two paragraphs, and a demurrer to them jointly was overruled.    In the first paragraph it was, in substance, shown that on or about November 25, 1889, the appellant falsely and fraudulently represented to the appellee that the Crystal Rock Salt Mining Company, a

corporation operating a salt mine in Kansas, was a prosperous corporation and owned a large number of acres of land underlaid with the finest kind of rock salt, which was easy of access and but a few feet below the surface of the ground; that the mine was easily worked; that the corporation had a full equipment of machinery for the purpose of working the mine, and had enough orders to keep the mine working for ten years, and could sell all the product in New Mexico if it wanted to do so; that it had obtained such rates of transportation from the railroad companies that it could deliver the salt at any point within the United States cheaper than any other salt company; that arrangements had been made with Armour and Swift to take, accept and use the salt of this corporation for their uses; and that it had opened up a large field; that the appellant advised and suggested that the appellee purchase of the appellant a number of shares of stock in said company; that in order to induce the appellee to purchase shares of stock in said company, appellant falsely and fraudulently represented to him as being true all of the above representations; that the appellee relying upon such representations as made upon the part of the appellant, and believing them to be true, purchased of the appellant one hundred shares in said company, and the appellant had issued to the appellee one hundred shares of stock directly from the company, and he paid the appellant therefor $250.00; that the representations so made at the time by the appellant were all false, and were known by him to be false when he made them; "that the said company so claimed to be represented by him, and in which he claimed to hold a large number of shares of stock," did not own any land in Kansas, but simply had a lease upon certain lands; that the mine was not in working condition;

that the company did not have sufficient orders to keep the mine working for ten years, or for any other length of time; "that salt appears many hundreds of feet below the surface, the said mine now being full with water and was nearly all of the time when such false representations were made to the" appellee by the appellant; that "the machinery is inadequate to perform the necessary work to operate the mine successfully, and was at the time said representations were so made;" that "said shares of stock were then and are now absolutely worthless;" that when said representations were made the appellee resided several hundred miles from the place where the mine is located, and had no means of ascertaining any other information, except as was given him by the appellant; that appellee relied implicitly upon the appellant and believed that he was dealing fairly with him, as he had known him for some time, and was his tenant at the time of the making of said representations, "Wherefore plaintiff prays judgment for one thousand dollars, for costs and all other proper relief."

In the second paragraph it was alleged that on or about the 11th of April, 1891, for the purpose of inducing the appellee to buy stock in the company, the appellant falsely and fraudulently made representations to the appellee set forth, being substantially the same as those set forth in the first paragraph; and it was alleged that the appellant "advised and suggested that" the appellee "purchase more shares of stock in said company; that he owned a large number of shares of stock himself and knew what the same was worth; that he knew a man who would sell more shares for three dollars and fifty cents;" that appellee agreed to take more shares, and paid appellant $700.00 therefor; that the appellee relying upon such representations and believing them to be true pur-

chased of the appellant two hundred shares of stock in the company, and the appellant "had issued to the plaintiff herein two hundred shares of stock directly from the company." It is alleged that the representations were false, and were known to be false by the appellant when he made them; that "the said company so claimed to be represented by him, and in which he claimed to hold a large number of shares of stock" did not own any land, etc., negativing the truth of the allegations as in the first paragraph. A similar averment was also made concerning appellee's residence and want of means of information, his reliance upon the appellant, and the appellant's knowledge of the falsity of the representations. It was alleged, that as soon as the appellee discovered that the representations were false and that "the shares of stock which had been sold to him were of no value, he asked defendant for the return of his money theretofore paid to him; that the plaintiff paid to the defendant the sum of $1,000.00 for the shares of stock so received by him in consideration of the said sum, but that in truth and fact they were worthless; that the plaintiff by reason of the premises herein set forth has been damaged in the sum of $1,000.00." It is alleged that said shares of stock "are now in the possession of the clerk of this court, and plaintiff hereby offers to submit to any order of the court which he may make relative thereto. Wherefore he asks judgment for the sum of $1,000.00 and for costs and all other proper relief." The judgment was, that "the sale of stock as set forth in plaintiff's complaint was made fraudulently and without consideration by the defendant to the plaintiff, and that the plaintiff do have and recover of and from said defendant the sum of nine hundred and fifty dollars and all his costs in this behalf laid out and expended."

The two paragraphs of complaint relate to different transactions essentially of the same character, consummated at different times. There seems to be no material difference between the supposed causes of action stated in them. The confusion, uncertainty, and ambiguity in each which render the theory of the pleader somewhat obscure give occasion for applying the rule that the pleading must be construed most strongly against the pleader, rather than most favorably to him. . Particular expressions must be made to harmonize with the general trend of the meaning of the language of each paragraph taken as a whole. It was incumbent upon the plaintiff to state a definite cause of action, and if he has made statements in the pleading which are capable of a meaning adverse to himself, or which are as susceptible of being understood in such unfavorable sense as of being taken in his favor, the construction must be adverse to him, if thereby consistency and definiteness upon a particular theory may be arrived at. There are statements in each paragraph that the plaintiff purchased the shares of stock from the defendant, and paid him for them. But there are many other averments which permit and require that these statements be not taken in their ordinary sense, and which lead to the conclusion that each paragraph relates to a taking of stock in the company by way of original issue, and not by way of purchase of stock owned by the appellant. It is alleged that the appellant claimed to own a large number of shares of stock in the company, but it is not alleged or denied that he did own any stock, and it is not stated that he sold, or that the appellee purchased any stock which the appellant owned or claimed to own. It is stated that appellant advised and suggested that appellee purchase, of the former, stock in the company, but it is not averred that the

representations were made to induce him to do so, but it is alleged that they were made to induce him to purchase stock in the company. The corporation is referred to as "so claimed to be represented by" the appellant. In the second paragraph it is said that the appellant stated that he knew a man that would sell stock, and that the appellee agreed to take more stock, from whom is not there stated; but it is alleged in each paragraph that the stock was issued to the appellee directly from the company.

He demanded back his money, but there is no pretense of a rescission. He had left the stock with the clerk of the court, but it is not stated that he had offered it to the appellant, or that he had so left it for him. This is all consistent with the theory that the stock in question had not been bought of the appellant, and it is upon such theory that we consider as to the sufficiency of the complaint.

The sixth section of our statute of frauds, being section 6634, Burns' R. S. 1894 (4909, Horner's R. S. 1897), provides: "No action shall be maintained to charge a person by reason of any representations made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representations be made in writing and signed by the party to be charged thereby, or by some person thereunto by him legally authorized." In *Cook* v. *Churchman*, 104 Ind. 141, this statutory provision is discussed and applied. It is there held, that "when representations are made concerning the credit, ability, etc., of another, by one not a party to the transaction, but with intent that the person concerning whom they are made shall obtain credit upon such representations, then, even though fraudulent, they are nevertheless within the statute." The form of the action is an immaterial matter, if to sustain the action such rep-

resentations must be proved. *Cook* v. *Churchman, supra*. While the statute in the form in which it has been enacted in this State does not expressly require that the representations be made with a particular intent, it is held in *Cook* v. *Churchman, supra*, that our statute is in all respects the equivalent of Lord Tenterden's act, and it is said that one of the tests whether a case is within the statute or not is whether the representations were made with the purpose to establish the credit or pecuniary ability of another. See *Medbury* v. *Watson*, 6 Metc. (Mass.) 246, 39 Am. Dec. 726; *Norton* v. *Huxley*, 13 Gray 285. It is further stated in *Cook* v. *Churchman, supra*, that it is immaterial that the person making the representations may have had some design of obtaining an incidental advantage to himself as a result of the credit intended to be secured thereby, and that when such representations are made with the intention that a third person shall in the first instance obtain credit, money, or goods thereupon, they must be in writing in order to give a cause of action against the person making them. It was further held, that representations made with a view to establish the general credit and pecuniary ability of another are not taken out of the statute by the fact that they are made concerning his particular property and assets.

In the case before us, the representations are not shown to have been made in reference to an alleged corporation which in fact had no existence, or to obtain a transfer of property or money from the appellee to the appellant, or to him and others, or to obtain credit for the appellant, or for him and others, however it might be supposed that he would have derived a profit incidentally if it had been directly stated that he was a stockholder; nor are the representations shown to have been made in reference to the charac-

ter, conduct, etc., of the appellant himself, or to in-
duce the appellee to purchase property from the ap-
pellant or the corporation.   If it can be said, as we
think it may, that it is shown, that the representa-
tions were made by the appellant to establish the gen-
eral credit or ability of the corporation with the intent
that it should obtain money thereon, such representa-
tions not being in writing signed by appellant or by
some person thereunto by him legally authorized, they
cannot be the basis of an action against him.   If the
elements of fraud be sufficiently shown, as to which
we make no decision, this would not alter the case.
The words "any other person" in this statute include
a private corporation.   The word person is a generic
term, including both natural and artificial persons.
It does not always in statutes embrace corporations,
but where, as here, there is nothing in the subject-
matter or in the context to indicate a purpose to use
it in the limited sense of natural persons, and the
object of the statute is fully subserved only by apply-
ing the general meaning and including therein arti-
ficial persons, this general application should be
made.   See 18 Am. and Eng. Ency. of Law, 404 et seq.;
6 Thomp. Corp., section 7790; Black Interp. of Law,
138; *Billings* v. *State*, 107 Ind. 54, 57 Am. Rep. 77.

In *Bush* v. *Sprague*, 51 Mich. 41, 16 N. W. 222, in the
second paragraph of the complaint, it was sought to
charge the defendants by reason of favorable repre-
sentations concerning the credit, etc., of a corpora-
tion in which the defendants were officers, relying
upon which the plaintiff was induced to purchase of
the corporation a certain number of shares of stock
therein for a certain sum paid to it.   There were dif-
ferences among the judges upon some questions in-
volved in the case, but there does not appear to have
been any dissent from the view that if there be a pay-

ment of money to a corporation for shares of its capital stock upon favorable representations of a single member of the corporation concerning its credit, etc., such a changing of property from cash into stock would be an obtaining of money by the corporation upon the exaltation of its credit and ability within the contemplation of the statute. The case as stated in the complaint seems to be within the statute. The judgment is reversed, and the cause is remanded with instructions to sustain the demurrer to the complaint.