## GROVER *v.* CAVANAGH ET AL.

[No. 6,046. Filed October 10, 1907.]

1. FRAUDS, STATUTE OF.—*Representations.—Action. — Contracts.— Deceit.*—No action can be maintained under §6634 Burns 1901, §4909 R. S. 1881, either upon an oral contract by defendant to answer for the debt of another or for deceit for oral false representations made to induce plaintiff to contract with, or to extend credit to, another.   p. 344.

2. SAME.—*Representations.—Primary Purpose to Benefit Defendant.*—Where defendant's false representations as to a third party are made with a view to defendant's benefit, and not to induce plaintiff to deal with such third party, the statute of frauds (§6634 Burns 1901, §4909 R. S. 1881) does not relieve defendant from liability.   p. 346.

3. SAME.—*Representations.—Benefit of Third Party.*—False oral representations made by defendant to. induce plaintiff to extend benefits to a third person are not actionable under §6634 Burns 1901, §4909 R. S. 1881.   p. 346.

4. SAME.—*Sales of Corporation Stock.—False Representations.*—Where the incorporators, stockholders and manager of an insolvent corporation conspire to sell the stock thereof, representing such stock to be worth par and to be a good investment and that the company had valuable assets, when it had nothing, they are liable to a person purchasing stock, who, without knowledge, relied upon such representations and lost her money thereby.   p. 346.

5. CORPORATIONS.—*Preferred Stock.—Rights of Owner.*—A preferred stockholder, under §§5066-5068 Burns 1901, Acts 1901, p. 434 and Acts 1893, p. 162 §§4, 5, is a shareholder, and not a creditor of, the corporation, and has certain preferential rights over the common stockholders.   p. 347.

6. DECEIT.—*Fraudulent Corporation.—Conspiracy.—Liability.*—Persons who, for fraudulent purposes, organize a corporation, as well as others who subsequently, with knowledge of the purpose, join them, are liable to any person sustaining damage by reason of the fraudulent and deceitful acts of such company, its officers and agents in selling the stock thereof. *Heintz* v. *Mueller*, 19 Ind. App. 240, overruled.   p. 347.

From Superior Court of Marion County (63,349) ; *Vinson Carter*, Judge.

Action by Martha A. Grover against Joseph R. Cavanagh and others. From a judgment for the individual defendants, the plaintiff appeals. *Reversed.*

*Harvey, Pickens, Cox & Kahn* and *Earl R. Conder,* for appellant.

*Frederick E. Matson* and *Joseph F. Cowern,* for appellees.

HADLEY, J.—This was an action instituted by appellant against the Mercantile & Bureau Company, an Indiana corporation, and Joseph R. Cavanagh, Samuel A. Townsend, Joseph B. Gwin, Edward D. Moore, Charles M. McCabe, Frank L. Wayman, and James E. Pierce, for damages.

The complaint is in two paragraphs. Each of said appellees demurred separately to each paragraph of the complaint. Each of said demurrers, except that of the appellee corporation, was sustained. Appellee corporation answered, trial was had, and judgment rendered in favor of appellant against appellee corporation and in favor of appellees against appellant on their demurrers. The question presented in this appeal is upon the ruling of the court in sustaining the demurrers of appellees to the complaint.

The first paragraph of the complaint avers that the Mercantile & Bureau Company is an Indiana corporation with an authorized capital stock of $150,000, of which $100,000 was designated as common, and $50,000 as preferred stock; that appellees Cavanagh, Townsend, Moore, McCabe, and Wayman were the incorporators, Pierce a director, and Gwin a stockholder and manager; that none of the capital stock of said company was paid in except that Cavanagh and Townsend assigned to said company certain copyright inventions, and received therefor the whole of the authorized common stock; that at that time said copyright inventions were not of the value of $100,000, but were of little or no value; that all of said officers and managers knew that said copyrights had no value and could have no value until they were perfected and placed on the market and a demand created therefor; that, for the purpose of raising a fund so to place said copyright articles upon the market, said parties provided for the sale of $50,000, par value, of the preferred stock, at the

time knowing that said company would have no capital or assets to carry on the sale except by the sale of said preferred stock, and that said preferred stock could have no value over and above the value of said copyrights; that said company was not successful in its business, and failed to perfect said copyrights or create a demand therefor; that thereafter said company and the other appellees, knowing that said copyrights were of no value and that said company was constantly losing money, determined to experiment further with said copyrights, and, knowing that said company had no cash capital for so doing, determined to purchase a printing plant for its use; that to procure the necessary money, said company and other appellees determined to represent and hold out to others, including this appellant, that its said stock was a good investment, its business and assets such that said stock was worth par, and thereby to sell a portion of said preferred stock, and said company, its officers and managers and some of its stockholders, to wit, said other appellees named herein, conspired and confederated and formed a joint and common purpose so to do; that in furtherance of said plan, scheme, conspiracy and confederation by and through its said officers and managers, particularly these appellees who each and all had knowledge of said purpose and of the condition of the business, property and finances of said company, as the agents of said company for said purpose, represented to appellant that the business of said company was prosperous and a good, paying investment; that the output of said company was a valuable asset and was selling rapidly at $10 per book, while the cost thereof was no more than sixty-five cents per book, and with a great demand existing therefor; that said company was earning profits and was negotiating for a large printing establishment to be used in this business; that said company then owned a good-sized printing plant, but needed a larger one for this business; that said company then owned two Lamson monotypes which were of the value of $2,000; that said

company was solvent, and did not need more money, but that its stock was a good investment at par, and that said stock would pay, under the then-existing circumstances, at least six per cent dividends annually; that it was unnecessary that said company sell any of its said stock, but that appellant would be granted the privilege of purchasing a portion thereof, if she desired to make a paying investment. It is then averred that each and all of said statements were untrue, and known by said company and said officers at the time to be untrue. Each of said averments is then specifically denied, and the facts set out in the denial averred to have been within the knowledge of appellees at the time. It is then averred that appellant theretofore had had no dealings with appellee corporation, and was unacquainted with its financial affairs, and knew nothing thereof except as stated and represented to her by said appellee; that she had no opportunity for learning the actual facts, and that appellees pretended to have knowledge of the facts so stated and represented to be true, and that appellant relied thereon and had no information to the contrary. It is then averred that, because of said representations so made and for said purpose, appellant bought twenty-six shares of said preferred stock and paid therefor $2,600, and received therefor twenty-six shares of preferred stock and thirteen shares of common stock; that said company received said amount and appropriated the same to its own use; that neither said common nor preferred stock at the time she so purchased the same was of any value, and has not since been of any value, and by reason thereof she has been damaged in the sum of $2,600.

The second paragraph of the complaint is substantially the same as the first, except that it is therein averred that appellees agreed together to form a corporation with a capital stock of $100,000 common stock and $50,000 preferred stock; that the $100,000 common stock should be issued to Cavanagh and Townsend for their copyrights, although

knowing at the time that said copyrights were incorrect, defective, and mere experiments. It was also agreed before such organization that said corporation should be used as a cover for their purposes and schemes, and as a means of inducing others to invest therein and purchase the stock thereof and pay for the same without knowledge as to the experimental condition of said copyrighted articles, and thus secure to said promoters and said company, for their individual use and benefit, the means whereby to carry into effect the schemes and purposes of said promoters. It is then averred that, in pursuance of said agreement, said corporation was organized, and under its cover said stock was sold to appellant by appellees under the false and fraudulent representations as averred in the first paragraph. The same averments, as to knowledge on the part of appellees and lack of knowledge on the part of appellant, are made as are found in the first paragraph.

It is contended on behalf of appellees that the representations of said appellees averred in the complaint were representations concerning the character, conduct, credit, ability, trade, or dealings of the defendant corporation, a third person, and hence §6634 Burns 1901, §4909 R. S. 1881, applies, and that appellees cannot be held for damages by reason thereof, since such representations were not in writing, as required by said section. On the other hand, appellant claims (1) that said representations were not made concerning the character, conduct, credit, ability, trade, or dealings, but were representations of existing facts as to substantive property for the purpose of showing the value of property sought to be sold; (2) that since the representations were made by the officers and managers of the corporation, the only persons who could speak for it, such representations were not made concerning a third person.

The question presented by the claim of appellant involves the construction of §6634, *supra*, being section six of the statute of frauds enacted in 1852. This section is as fol-

lows: "No action shall be maintained to charge any person by reason of any representation made concerning the character, conduct, credit, ability, trade, or dealings. of any other person, unless such representation be made in writing and signed by the party to be charged thereby, or by some person thereunto by him legally authorized."

The reason for the enactment of this statute is well stated in *Cook* v. *Churchman* (1885), 104 Ind. 141, where the court say: "The statute we are now considering is in all respects the equivalent of what is commonly known as Lord Tenterden's act. This act was introduced to supply a defect, found to exist in the statute of frauds, which was rendered conspicuous by the decision in *Pasley* v. *Freeman* [1789], 3 T. R. 51. Notwithstanding the provision that no action should be maintained whereby to charge another upon any special promise to answer for the debt, default or miscarriage of another, unless the agreement was in writing, signed, etc., the decision referred to pointed out a mode of evading the statute, by shaping the action so as to make it count upon a tort or wrong by some false or fraudulent representation to the defendant, in order to induce him to contract with another, instead of upon a special promise. The intent and purpose of the statute was to cut off all such actions and to place represenations of the character therein referred to upon the same basis as special promises to answer for the debt of another." To the same effect are the cases of *Walker* v. *Russell* (1904), 186 Mass. 69, 71 N. E. 86, and *Medbury* v. *Watson* (1843), 6 Met. (Mass.) 246, 39 Am. Dec. 726, where the same statute was under consideration. From these authorities it clearly appears that the protection of the statute can only be invoked by those who have made representations of the character, conduct, credit, ability, trade, or dealings of a third party to induce a person to extend credit in some form to such third party.

"Representations as to the character, conduct, credit, ability, trade, or dealings, of a third person, when the primary

purpose for which such representations are made is, not to induce the extension of credit, or the delivery of money or goods to the person concerning whom they are made, but to secure the execution of a contract to which the person making them is a party, are not within the terms of the statute, and need not be in writing in order to be actionable. *St. John* v. *Hendrickson* [1882], 81 Ind. 350; *Hassinger* v. *Newman* [1882], 83 Ind. 124, 43 Am. Rep. 64. When, however, such representations are made with the intent that a third person shall in the first instance obtain credit, money or goods thereupon, in order to give a cause of action against the person who made them, they must be in writing, signed, etc." *Cook* v. *Churchman, supra.* See, also, *Mann* v. *Blanchard* (1861), 2 Allen 386; *Medbury* v. *Watson, supra; Norton* v. *Huxley* (1859), 13 Gray 285; *Wells* v. *Prince* (1860), 15 Gray 562; *McKinney* v. *Whiting* (1864), 8 Allen 207; *Belcher* v. *Costello* (1877), 122 Mass. 189.

The representations averred in the complaint before us were not made to induce the extension of credit. They were representations of material, existing facts that went to establish primarily the value of the property appellees were seeking to sell.

That the representations incidentally conveyed the impression that the corporation was worthy of credit, since they were to the effect that the corporation had assets, was solvent, and was prosperous, etc., does not affect the question. They were not made for such purpose and were not acted upon in such manner. The purpose and effect of the representations were to convince appellant that the preferred stock of said corporation was valuable and a good investment; and, acting upon the belief thus induced, she made the purchase, to her damage. It is, however, contended by appellees that the purchase of preferred stock in an Indiana corporation is in effect a loan. But this position is untenable.

The holder of preferred stock is a shareholder in the corporation. He is not a corporation creditor, and has no rights as such. His rights are those of the common shareholder, except as those rights are limited by the statute and the contract, and the additional right to have his dividends paid out of the earnings and his stock redeemed out of the assets in preference to the common shareholder. 1 Cook, Corporations (5th ed.), §§267-271; §§5066-5068 Burns 1901, Acts 1901, p. 434, Acts 1893, p. 162, §§4, 5. The purchase of stock of a corporation is not a loan to the corporation of the amount of said stock. None of the elements of debtor and creditor exist. The purchase of stock is the purchase of so much of an interest in the assets and affairs of such corporation.

The second paragraph proceeded upon the theory that the organization of the corporation was a part of the fraudulent scheme, and was effected as a cover or misleading device or instrument for the successful fleecing of innocent investors, and that the whole plan was fraudulent from the beginning. This being true, all who knowingly entered into it became liable for all damages that might be caused through their fraudulent devices. The count is a plain action for deceit. The conception of the scheme, the organization of the company, the false representations, all are charged as a part of one general plan of fraud and deception for the benefit of all the conspirators. That one link of the scheme of fraud involved representations as to the value of the assets and stock of a corporation ought not in all good conscience to entitle the wrongdoers to the protection of a statute that was enacted solely to protect against fraud, and not as a shield for fraud. *Miller* v. *Barber* (1876), 66 N. Y. 558.

The case of *Cook* v. *Churchman, supra,* is not analogous to this case in any particular, and the general rules therein laid down are not antagonistic in any degree to our holding herein.

The case of *Heintz* v. *Mueller* (1898), 19 Ind. App. 240, however, does incidentally enunciate some principles of law that we are of the opinion are not supported by the clear weight of the authorities, and it is therefore overruled so far as it conflicts with the holding herein made.

For the foregoing reasons, the judgment is reversed, and the trial court directed to overrule demurrers to the complaint. All concur.