[Civ. No. 7698. Second Appellate District, Division One.—July 14, 1933.]

ERNEST G. CARR et al., Appellants, v. C. C. C. TATUM et al., Respondents.

Bodkin & Lucas, V. P. Lucas, H. G. Bodkin and Stuart Silliman for Appellants.

Guy T. Graves, James C. Sheppard, Mathes & Sheppard and Haight, Mathes & Sheppard for Respondents.

HOUSER, J.—Plaintiffs were the owners of certain real property. Defendants Tatum and LaGasse were agents who represented plaintiffs in the sale of the property to a man named Hess. In order to assist Hess in his plans to improve the property, in consideration for their deed therefor to Hess, instead of receiving cash or its equivalent, at the suggestion and solicitation of defendants Tatum and LaGasse, plaintiffs received from Hess a promissory note secured by a deed of trust of the property, which was made subject to each of two prior mortgages with which Hess had encumbered the property in order to obtain funds with which to make the proposed improvements thereon. Thereafter, on the failure of Hess to pay the indebtedness secured by one of such prior mortgages, as the result of a sale on the execution of a judgment recovered in a suit to foreclose such mortgage, the plaintiffs lost the amount of money represented by the value of the property formerly owned by them and which, as hereinbefore set forth, had been conveyed by them to Hess. Thereupon plaintiffs commenced the instant action against defendants Tatum and LaGasse to recover from them a judgment for the damages suffered by plaintiffs in the transaction. In form, the action was for fraud and deceit alleged to have been practiced by defendants upon plaintiffs in inducing them to sell the property to Hess on the terms hereinbefore indicated. According to the allegations of the amended complaint filed by plaintiffs, in substance the fraudulent conduct of defendants consisted in the making of intentionally false oral representations by them to plaintiffs concerning the financial

responsibility of Hess. In particular, by the amended complaint it was alleged that, "with intent to cheat and defraud plaintiffs", the defendants made the following representations to plaintiffs:

"(a) That the said William B. Hess was a responsible business man;

"(b) That the said C. C. C. Tatum and Simon LaGasse had 'looked up' Mr. Hess and had found that he was rated 'A-1';

"(c) That defendants' investigation showed that said William B. Hess was a very responsible New York business man;

"(d) That said William B. Hess was then building a large apartment house here in Los Angeles, which said apartment house was to be erected in accordance with a sketch then and there shown to plaintiffs;

"(e) That said Simon LaGasse stated that C. C. C. Tatum was a reliable and honest person and that said C. C. C. Tatum would not stand for any 'crooked work';

"(f) That said Simon LaGasse further stated that said William B. Hess was 'financially responsible', and was a man with plenty of money;

"(g) That said C. C. C. Tatum was a responsible person, and that said defendants would not let plaintiffs lose money in the deal; that said defendants would protect plaintiffs against loss;

"(h) That certain property located in Madera county, California, and owned by the said William B. Hess, had been investigated by defendants and found to be owned by Hess, and worth twenty-five thousand dollars ($25,000.00);

"(i) That said defendants stated to plaintiffs as follows: 'That we would not take you into this deal, if we did not know what we were doing'."

To the amended complaint defendants demurred both generally and specifically; which demurrer was by the trial court sustained, with plaintiffs "given ten days to amend". On the failure of plaintiffs to amend their amended complaint, a judgment of dismissal of the action was entered. It is from such judgment that the instant appeal is prosecuted.

Although certain minor questions of law are raised by the parties to the appeal, it is largely, if not entirely, upon

the construction which should be placed upon the provisions of section 1974 of the Code of Civil Procedure that the rights of the respective litigants herein depend. That statute is as follows: "No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the party to be charged."

The contention by defendants on the hearing of the demurrer to the amended complaint, and as maintained by them as respondents herein, was and is respectively that the provisions of the statute are applicable to the alleged representation made to plaintiffs as hereinbefore set forth, and consequently that the amended complaint failed to state a cause of action against defendants. With reference to that situation, on behalf of appellants the point is met with the implied admission and assertion respectively that "the authorities are quite well settled that where the representation is strictly as to credit of a third person and no other considerations are involved the statute applies, and the representations must be in writing. The difficulty comes, however, when we consider the relationship existing between the person making the representation and the person to whom representations are made".

In such circumstances, this court is relieved from the necessity of establishing the applicability of the provisions of the statute to a general situation wherein it appears that the representations of which complaint is made concededly embrace facts "as to the credit of a third person". Nor does this court experience any hesitation in declaring that, as tested by the allegations of the amended complaint and weighed by the authorities, the representations in question fall squarely within the requisite precedent conditions demanded by the terms of the statute for its operation. That statements made by one person to a second individual to the effect that a third person with whom the second individual was negotiating with reference to a business transaction was "a responsible business man"; that the first person had "looked up" the third person and found that "he was rated A–1"; that the third person "was a very responsible New York business man"; that he was "financially responsible and was a man with plenty of money";—

constituted representations "as to the credit" of such third person, is so clear that it would seem a useless task to attempt to establish the correctness of such a conclusion (*Nevada Bank* v. *Portland Nat. Bank,* 59 Fed. 338; *Cook* v. *Churchman,* 104 Ind. 141 [3 N. E. 759]); and that the remaining allegations of the complaint regarding business activities of such "third person" in the matter of the contemplated construction by him of "a large apartment house", together with his ownership of "certain property . . . worth $25,000",—also constituted representations "as to the credit of a third person", is attested by the language that occurs in the opinion in the case of *McKee* v. *Rudd,* 222 Mo. 344 [121 S. W. 312, 319, 133 Am. St. Rep. 529]. It is there said that:

"Massachusetts has a similar statute, and in *Hunnewell* v. *Duxbury,* 157 Mass., loc. cit. 6 [31 N. E. 700], upon a record appeal of that case, the court said: 'It is well settled that representations made by officers of a corporation with reference to its financial standing or means are made with reference to the credit or ability of another person within the meaning of Pub. St. 1882, c. 78, sec. 4. *Kimball* v. *Comstock,* 14 Gray (Mass.) 508; *Wells* v. *Prince,* 15 Gray (Mass.) 562; *Mann* v. *Blanchard,* 2 Allen (Mass.) 386; *McKinney* v. *Whiting,* 8 Allen (Mass.), 207. The plaintiff does not deny the correctness of this proposition, but contends that a statement that another person is possessed of certain specific property does not come within the provisions of the section, and need not be in writing in order to be actionable. We cannot accede to this proposition. The statute is a general one, purposely broad in its terms, and intended to prevent an understood mischief. It is to be so construed as to make it effectual to prevent the fraud at which it was aimed. To exclude from its operation statements as to the ownership of specific property, if made concerning the "credit, ability, trade, or dealings" of another who is said to be the owner of the specific property would deprive it of force. . . .'" See, also, *Walker* v. *Russell,* 186 Mass. 69 [71 N. E. 86, 88, 1 Ann. Cas. 688], in which other authorities are cited.

But as to some extent hereinbefore has been indicated, the crucial point of law herein involved is whether in view, firstly, of the alleged fiduciary relationship which

existed between the plaintiffs and the defendants; or, secondly, because of the further alleged fact that the representations in question were fraudulently made with the intention thereby to deceive and to defraud plaintiffs;— an exception was thus created regarding the express provisions of the statute.

Beginning in 1789, with the English case of *Pasley* v. *Freeman*, 3 T. R. 51, 1 Rev. Rep. 634, 12 Eng. Rul. Cas. 235, 100 Eng. Reps. (Full Reprint) 450, and thereafter generally followed not only in English jurisprudence (see head-note annotations in last cited report), but as well in the United States, as indicated in *Patten* v. *Gurney*, 17 Mass. 182 [9 Am. Dec. 141], and *Upton* v. *Vail*, 6 Johns. (N. Y.) 181 [5 Am. Dec. 210], and note, the principle was recognized and made effective that at common law an action for damages resulting from fraud and deceit would lie when it arose from oral false representations made by one person to another regarding the financial standing or credit of a third person, which to his damage was relied upon by the person to whom such false representations were made. As far as England was concerned, it was not until 1828 that any limitation or restriction was placed upon such common-law right; at which time, by the Act of George IV, chapter 14, section six (generally known as Lord Tenterden's Act), a statute was passed by which in effect it was provided that "no action shall be brought after the first of January, 1829, to charge any person, upon or by reason of any representation or assurance made or given, concerning or relating to the conduct, credit, ability, trade or dealings of any other person, to the intent or purpose that such other person may obtain credit, money or goods (there)upon unless such representation or assurance be made in writing signed by the party to be charged therewith".

In each of many of the several states of the United States similar statutes, varying somewhat in their respective scopes, have since been enacted. That in this state already has been set forth herein. In Idaho, a statute identical with that in California has been enacted; and it is upon the construction of that statute by the Supreme Court of that state in the case of *W. G. Jenkins & Co.* v. *Standrod,* 46 Idaho, 614 [269 Pac. 586], that appellants

place principal reliance for a reversal of the judgment in the instant case on the ground that where a fiduciary relationship exists as between the immediate parties to the representation the provisions of the statute have no application. That was an action brought by a banking corporation to recover a judgment for damages from two of its directors on the ground that by reason of certain false representations made by the defendants to the remaining directors thereof, the plaintiff corporation had been induced to purchase certain promissory notes from another banking corporation, of which latter corporation the defendants were also directors;—the false representations being "that all of said notes were good and were worth face value, and would be paid and liquidated in the ordinary course of banking". It is there very definitely ruled that the statute in question "was not intended to cover oral representations made in violation of a fiduciary relationship". However, at the outset of its discussion of the issue there presented, the court made it plain that it was not considered necessary to discuss the applicability of the statute to the representations made by the defendants, but that "the question here is to be viewed rather as the breach by the defendants of their duties as fiduciaries, and does not necessarily depend upon the actual representations alleged".

Another case in point for the appellants is that of *Vertrees* v. *Head & Matthews,* 138 Ky. 83 [127 S. W. 523], wherein it is held that the statute does not embrace representations that are deceitfully made, but only such as are made in good faith respecting the credit or standing of another.

In a note contained in 9 American Law Reports, pages 536, 540, the broad statement appears that "by the weight of authority a statute requiring a writing to make effective a representation as to the credit of another does not apply to representations made with the intention to defraud"; and several authorities emanating from each of the appellate tribunals of the states of Indiana, Kentucky and Michigan are cited in support thereof. So that it may be not doubted that eminent authority exists for the position assumed by appellants herein and for the establishment . whereof in this state they so stoutly contend.

On the other hand, in the same note of volume 9, American Law Reports, at page 542 thereof, immediately follow-

ing the citation of the authorities to which reference just has been had, occurs the statement that ''in other jurisdictions the view seems to obtain that since the statute of frauds contains no exception with respect to fraudulent representations as to the credit of a third person no such exception can be introduced by the courts''. (Citing authorities from each of the several states of Alabama, Indiana [*Cook* v. *Churchman,* 104 Ind. 141, 3 N. E. 759], Maine, Massachusetts, Missouri, as well as several from England.) In that connection, and dealing with each of appellants' asserted exceptions to the apparent expressed intent of the statute, is the well-considered case of *Knight* v. *Rawlings,* 205 Mo. 412 [104 S. W. 38, 44, 12 Ann. Cas. 325, 13 L. R. A. (N. S.) 212], wherein many authorities are exhaustively reviewed. In substance and effect, it is there emphatically and positively declared that the statutory provision is a complete bar to an action for damages for false oral representations made with respect to the credit of a third person, regardless of whether such representations were made either in good faith, or with knowledge of their falsity, in order to deceive and defraud the plaintiff; or, in pursuance of a conspiracy with the person in regard to whose credit the representations were made. In that regard, in part the language of the court is as follows:

''Now it is a familiar doctrine that, when the statute of another state or country is adopted by the legislature of this state, the construction placed upon that statute prior to its adoption in this state will be presumed to have met the approval of our legislature when adopting it. We have seen that Lord Tenterden's act was enacted in 1828, and the courts of England had, prior to 1845, expressly ruled that a false representation as to the credit of another would not take the case out of that act. And considering the purpose of that act and the causes which led to its adoption, particularly the case of *Pasley* v. *Freeman,* and the great weight of authority in this country, we are inclined to the opinion expressed by Browne in his work on the Statute of Frauds, and hold that the plain meaning of this statute is that it requires a writing to charge a defendant upon any representation made in regard to the credit, etc., of a third party whether such representation is made in good faith, or is known to be false and made in order to deceive and

defraud the plaintiff, because the presence of this very element of intention to deceive and defraud was the very point upon which the court, in *Pasley* v. *Freeman*, held that the statute of frauds of 29 Car. II did not apply. The plain purpose of Lord Tenterden's act was to require a writing in a case for which St. 29 Car. II had failed to provide, and to sustain the contention of the plaintiff in this case we must go to *Pasley* v. *Freeman* and ignore the statute (sec. 3422, Rev. Stat. 1899 [Ann. St. 1906, p. 1965]) which was enacted to remedy the ruling in that case. To do that we must import an exception into the statute, a restriction and exception which its language does not justify."

Appraising the authorities generally which have a direct bearing upon the construction which should be placed upon statutes of similar force and effect as the California statute, it is said in 25 Ruling Case Law, page 445: "The view is taken in some cases that the statute does not apply where representations are made with actual fraudulent intent, but should be restricted to cases of unintentional misrepresentations. The better opinion, however, is to the contrary, for there is no such restriction in the statute. And the fact that the complaint contains averments charging a conspiracy cannot affect the question. The purpose of the statute cannot be disappointed by the form of the complaint. The necessity that the representations should have been made in writing is the same, where a conspiracy is set up as where it is not." Likewise, in volume 14, Am. & Eng. Encyclopedia of Law, page 33, occurs the statement: "Some courts have held that the statute does not apply to cases of actual fraud; that is, to cases in which the representation is not only false, but is made with fraudulent intent. The better opinion, however, is to the contrary, for there is no such restriction in the statute."

No useful purpose would be subserved by a review herein of the many cases in which opinions of the courts have been expressed either respectively in accord or in disagreement with the views of the court in the case of *Knight* v. *Rawlings,* 205 Mo. 412 [104 S. W. 38, 12 Ann. Cas. 325, 13 L. R. A. (N. S.) 212], to which reference hereinbefore has been had. As a matter of course, the principle of construction is recognized that a statute of the nature of that here under consideration, if practicable, should be so construed

as to prevent it from operating as a protection to or as a shield of fraudulent practices. (*Nevada Bank* v. *Portland Nat. Bank*, 59 Fed. 338; *Stauffer* v. *Hulwick*, 176 Ind. 410 [96 N. E. 154, Ann. Cas. 1914A, 951].) On the other hand, it must be apparent, as is stated in each of many of the authorities, that the statute is but a supplement to the statute of frauds; and although it may not infrequently happen that by the strict operation of the statute a palpable fraud may result in a financial loss to some unfortunate individual, in the vast majority of cases the rule announced by the statute effectively operates to prevent the perpetration of fraud. The language of section 1974 of the Code of Civil Procedure is all-inclusive. Apparently, its provisions embrace *any* person who may make representations "as to the credit of a third person". No express exception is made as to a person who stands in a confidential relation to the person to whom such representation is made. Nor is any exception made regarding the intention of the person who may make the representation;—whether made honestly or in "bad faith". Not only the history of the statute, but as well the decisions to which reference hereinbefore has been had, indicate that the purpose of the original English statute was to extend or to supplement the statute of frauds, as far as its provisions related to promises "to answer for the debt, default, or miscarriage of another". At least the later statute is analogous to the former. If, generally speaking, neither of appellants' asserted exceptions finds recognition in the law as it may affect the statute of frauds, it would seem improbable that either of the claimed implied exceptions to section 1974 of the Code of Civil Procedure, for which the appellants here contend, could have application. In circumstances similar to those present in the instant action, the weight of authority fails to sustain the position assumed by the appellants.

The judgment is affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 11, 1933.