LEVI M. BATES & others *vs.* JOSEPH YOUNGERMAN & another.

Suffolk.     March 9. — June 29, 1886.     W. ALLEN & HOLMES, JJ., absent.

In an action against A. and B. for the conversion of certain goods, evidence is inadmissible, under the Pub. Sts. c. 78, § 4, of oral representations or assurances made by B., in regard to the credit and pecuniary responsibility of A., that A. might obtain credit of the plaintiff, for the purpose of showing that the plaintiff was fraudulently induced to sell the goods in question to A.

In an action against A. and B. for the conversion of certain goods, the plaintiff's evidence showed that A. was introduced to the plaintiff by B., who had previously bought goods of the plaintiff, as a person desirous of buying goods of the plaintiff on credit; that A. then signed, in B.'s presence, a written statement, showing his assets and liabilities, and B. also made to the plaintiff oral representations in regard to A.'s pecuniary responsibility; that the plaintiff, relying

upon the statement and these representations, sold the goods in question to A. on a credit of thirty days; that B was present during the sale, and assisted in the selection of the goods by A.; that a bill of parcels was made out to A., and the goods were shipped, according to A.'s directions, in a case marked with his name, to his place of business; that the plaintiff afterwards saw the goods exposed for sale, and the case in which they were shipped, unpacked, in B.'s shop; that, at the end of the thirty days, A. was unable, when called upon, to pay for the goods; and that B. refused, upon demand, to pay for them. *Held*, that there was no evidence of a conversion by A. and B., jointly or severally.

TORT for the conversion of certain personal property. Trial in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions, in substance as follows :

Asa D. Dickenson, a witness for the plaintiffs, testified as follows: " I reside in New York, and am manager of the credits of the plaintiffs' firm in that city, and have been in their employ four years. The plaintiffs do business under the firm name of Bates, Reed, and Cooley,. as importers and jobbers of dry goods, in Broadway, New York. I have known Marks Rubinouvz, one of the defendants, about six months ; he has been a customer of the plaintiffs for about that space of time ; the defendant Youngerman I never knew until October 18, 1881, and on that day he was introduced to me by Rubinouvz, who stated that Youngerman was desirous of purchasing goods of the plaintiffs on credit, and Youngerman there made in the presence of Rubinouvz, a written statement.* After the statement was made and signed, I gave the defendant Youngerman a line of credit, relying solely on said statement, and the oral representations or assurances of the defendant Rubinouvz, hereinafter referred to. Both defendants then went out with Howard Crosby, one of the plaintiffs' salesmen, to select goods. Afterwards, the defendants informed me that the defendant Youngerman had selected and purchased goods of the plaintiffs to the value and amount of $249.55, which Youngerman wished to have delivered to the Providence and Stonington Steamship Company in a case directed to him at 37 North Bennet Street, Boston. Said goods belonged to the plaintiffs prior to the sale, and the defendant Youngerman bought them for the purpose of peddling in and

---

* The statement, which was put in evidence, was signed by Youngerman, .and purported to be " as a basis for present and all future purchases," and stated his assets as $2000, and his liabilities as $300.

about Boston, according to his statement. I have no personal knowledge of any of the shipments from our house."

The bill of sale of the goods was put in evidence, showing a sale to Youngerman on a credit of thirty days.

Howard Crosby, a witness for the plaintiffs, testified as follows: "I reside in New York, and am a salesman in the employ of the plaintiffs, and have been since 1880. I know both of the defendants, but never, to my recollection, met either prior to October 18, 1881. They were then introduced to me by E. C. Mitchell, a salesman for the plaintiffs. On October 18, 1881, a bill of goods was sold by me, for the plaintiffs, to the defendant Youngerman. Both defendants were present at the time, and the goods were mostly selected by the defendant Rubinouvz, but the sale was made to the defendant Youngerman. The said goods, previous to the sale, were owned by the plaintiffs. The defendant Rubinouvz gave directions as to the kind and quality of the goods purchased, and in most instances selected the specific goods taken by the defendant Youngerman. E. C. Mitchell was present a portion of the time during the sale."

E. C. Mitchell, a witness for the plaintiffs, testified as follows: "I reside in Boston; in 1881, was a salesman for the plaintiffs, and was in their store, October 18, 1881, and there met the defendants. The defendant Rubinouvz stated that the defendant Youngerman was desirous of purchasing goods from the plaintiffs, on credit. I had known the defendant Rubinouvz for about a year. I told him that Dickenson was the party to see about credit. They then went to Dickenson, and soon after returned into that part of the store where I was, and I saw them with Crosby, and I saw him go around with them. I saw the defendant Rubinouvz selecting most of the goods, and heard him tell Youngerman to take certain goods which he pointed out at different times. The goods were cashmeres and shawls. A few days after shipment from New York, I saw most of the goods, to wit, all the cashmeres, in the store of Rubinouvz, in Salem Street, Boston, on the shelves for sale. I saw the case marked 'Joseph Youngerman' in his store, unpacked. I knew the goods by the marks, and by what I had seen them select. At the end of the thirty days I went to the defendant Youngerman's place in North Bennet Street, which

was a dwelling-house, and saw no goods there of any kind. I asked him about paying for the goods, and he said he did not have anything to pay with. I went to the defendant Rubinouvz, and asked him for payment for the goods, and he said to me, ' I did not buy the goods.' Then I said, ' Well, you have had the goods; there are some of them now on your shelves.' I pointed to them. He then said, ' Well, I shall not pay for them.' "

The plaintiffs offered evidence of oral representations or assurances made by the defendant Rubinouvz, on October 18, 1881, in regard to the credit and pecuniary responsibility of the defendant Youngerman, that Youngerman might obtain credit, for the purpose of showing that they were thereby fraudulently induced to make the sale to Youngerman. But the judge ruled that said evidence, the statement not being in writing, was inadmissible. The judge ruled also, that, upon the evidence, the action could not be maintained; and directed the jury to return a verdict for the defendants. The plaintiffs alleged exceptions.

*H. Dunham,* for the plaintiffs.

*J. H. Sherburne & H. N. Sheldon,* for the defendants.

GARDNER, J. The plaintiffs offered oral representations or assurances made by the defendant Rubinouvz, in regard to the credit and pecuniary responsibility of the defendant Youngerman, that Youngerman might obtain credit. This was offered for the purpose of showing that the plaintiffs were fraudulently induced to make the sale to Youngerman. This evidence comes within the provisions of the Pub. Sts. c. 78, § 4. The false representations were made concerning the defendant Youngerman, with an intent to induce the plaintiffs to part with their property to Youngerman on credit. This is within the prohibition of the statute. *Kimball* v. *Comstock,* 14 Gray, 508. *Wells* v. *Prince,* 15 Gray, 562. *Mann* v. *Blanchard,* 2 Allen, 386. *McKinney* v. *Whiting,* 8 Allen, 207. In their offer of proof, the plaintiffs did not go far enough to take it out of the limitations of the statute.

At the time of the sale, the defendant Youngerman, in the presence of Rubinouvz, made a written statement " as a basis of credit for present and all future purchases." The manager of

the plaintiffs' firm in New York testified that, "after the statement was made and signed, I gave the defendant Youngerman a line of credit, relying solely on said statement and the oral representations or assurances of the defendant Rubinouvz." These representations or assurances were rightly excluded, as we have already shown. There is nothing in the bill of exceptions to show that any part of the written statement was untrue. It is difficult to see what evidence of misrepresentation or fraud was laid before the jury to show a conversion of the plaintiffs' property by the defendants, or either of them.

If the property was obtained from the plaintiffs by the defendant Youngerman under the form of a sale, but in fact by misrepresentation and fraud, and the defendant Rubinouvz obtained it of Youngerman with knowledge of the fraud, the plaintiffs could maintain trover for it, because the possession both of Youngerman and of Rubinouvz was wrongful, and constituted a conversion. *Stevens* v. *Austin*, 1 Met. 557. In the case at bar, we find no evidence of a conversion by the defendants, jointly or severally.                          *Exceptions overruled.*