## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS.

---

ELIAS R. HUNNEWELL *vs.* JOHN W. DUXBURY & others.

Suffolk.   May 24, 1892. — June 23, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Corporation — Certificate — Fraudulent Representations — Action of Deceit — Evidence — Statute of Frauds.*

The directors of a foreign corporation, engaged in the business of advertising by means of an electrical device, made and filed with the Commissioner of Corporations the certificate required by the St. of 1884, c. 330, § 3, in order to enable the corporation to do business in this Commonwealth. They voted that the corporation should purchase from D., one of their number, as agent, certain contracts which he had made with electrical companies, with such contracts as a special committee appointed at the meeting might deem it advisable to make, with such other contracts as D. might have made for the same purpose, and all patents or applications for patents covering devices relating thereto for $149,650 in fully paid, non-assessable stock of the corporation, and also voted to pay themselves $50 each for their services in connection with the formation of the corporation. Pursuant to these votes, fully paid stock to the amount above named was issued to D., and one share of the par value of $50 was transferred to each of the seven directors, making the whole capital stock, and the capital stock was not paid in in any other manner. No patents were ever transferred to the corporation, and none were ever held for its benefit, except so far as the electrical companies with which it had contracts may have had patents which would have been in use thereunder in connection with its advertising devices, and except that D. had made inventions and improvements relating to that business for which he had applied for letters patent, which applications had

been allowed, but letters patent had not been issued.   D. had also acquired certain contracts for the use of electric apparatus in connection with the inventions and improvements above named, and was ready and willing to give the corporation a legal title to these improvements, inventions, and contracts, and the stock which was issued to him was in payment for these, which were believed by the directors to be of great value.   D., at an interview with a creditor of the corporation, in which D. explained to him the devices in use by the corporation, said to him, " that they had filed a declaration and were now prepared to go on and push the business of advertising."   In consequence of this statement, the creditor examined the certificate filed by the corporation, which showed that all the capital stock had been paid in, $350 in cash and $149,650 by the transfer of patents to the corporation, and, relying thereon, he accepted in payment for his debt the promissory notes of the corporation, which proved to be worthless, and he was unable to collect his debt.   No other reference to the certificate was made by any of the other directors.   *Held,* that he could not maintain an action of deceit against the directors.

Oral statements of an officer of a corporation, that it owns certain specific property, if made concerning its " credit, ability, trade, or dealings," are within the Pub. Sts. c. 78, § 4, and are not actionable.

TORT, for fraudulent representations alleged to have been made by the defendants as directors of the Electric Advertising Company.   Trial in the Superior Court, before *Maynard,* J., who ruled that the action could not be maintained; and directed a verdict for the defendants.   The plaintiff alleged exceptions, which appear in the opinion.

*S. J. Elder,* (*J. Woodbury* with him,) for the plaintiff.

*W. F. Slocum & W. S. Slocum,* for the defendants.

BARKER, J.   After the decision sustaining the exceptions and demurrer of the defendants, reported in 154 Mass. 286, the plaintiff filed an additional count, declaring that the defendants were directors and officers of a corporation organized under the laws of Maine, engaged in the business of advertising by means of a device consisting of an electric clock and a revolving drum connected therewith, and that the plaintiff had manufactured for the corporation certain clock cases, to be paid for in cash on delivery; that the defendants falsely and fraudulently, for the purpose of deceiving and defrauding the plaintiff, and inducing him to act thereon, represented to the plaintiff that the device was patented, and that the patent was the property of the corporation; that the plaintiff, believing the representation to be true, and relying thereon, waived payment in cash for the clock cases, and accepted in part payment therefor the corporation's promissory notes, payable on time, and indorsed and transferred

them to a bank; that the representations were false, as the defendants well knew, inasmuch as the device was not patented and the corporation had no patent therefor, and had no assets of any value and was insolvent, and had no assets and was insolvent at the maturity of the notes and failed to pay them; and that the plaintiff was compelled to pay the amount of them to the holder, and has never been able to obtain payment or satisfaction from the corporation.

At the trial upon this count, the plaintiff proved the organization of the corporation under the laws of Maine, and that the defendants were its officers and directors, and that before July 1, 1885, he had made clock cases for the corporation, for which he had rendered it bills and received payment in part, and that on that day the corporation owed him upon the account the sum of $2,332.50; that on September 9, 1885, at the request of the directors, he settled and receipted this account in full, receiving in payment two notes on time, each for $1,000 and interest, and the sum of $232.50 in cash; and also that the defendants made and filed with the Commissioner of Corporations, under the St. of 1884, c. 330, the certificate of August 11, 1885. He also introduced evidence which he asserted tended to show that the certificate was intended and allowed by the defendants to influence and deceive him into accepting the notes, and also evidence tending to show the making to him between July 1, 1885, and September 9, 1885, of false oral representations that certain property was owned by the corporation. At the conclusion of his evidence, the defendants asked the court to rule that the action could not be maintained, because the oral representations were within the provisions of the Pub. Sts. c. 78, § 4, and because the plaintiff had not shown himself entitled to treat the certificate as a representation to himself, and the court ruled that the action could not be maintained, and directed a verdict for the defendants. The case comes before us upon the plaintiff's exception to this ruling.

Upon the question whether the certificate was intended and allowed by the defendants to influence and deceive the plaintiff, the evidence was substantially as follows. In addition to the proof of the organization of the corporation in Maine in January, 1885, and the fact that the defendants were its officers and direc-

tors, and the making and filing with the Commissioner of Corporations in Massachusetts of the certificate of August 11, 1885, it was shown that on March 28, 1885, the directors, of whom the defendant Dowd was one, voted that the company should purchase from Dowd as agent the contracts which he had made with the Boston Electric Time Company, the Massachusetts Electric Time Company, and the Electric Time and Messenger Company of Rhode Island, with such contracts as a special committee appointed at the meeting might deem it advisable to make, with such other contracts as Dowd may have made for the same purpose, and all patents or applications for patents covering devices relative thereto for $149,650 in fully paid, non-assessable stock of the company ; and also to authorize the repurchase from Dowd for one dollar of fourteen hundred of the shares of the stock of the company, to be disposed of at such price as the executive committee may direct, and also to pay the defendants fifty dollars each for their services in connection with the formation of the company. That pursuant to these votes fully paid stock was issued to the amount of $149,650 to Dowd, who at once transferred fourteen hundred shares of it to one Clarke as trustee for the company; that one share of the par value of fifty dollars was transferred to each of the seven directors, making the whole capital stock; and that the capital stock was not paid in in any other manner. No patents were ever transferred to the corporation, and none were ever held for its benefit, except so far as the companies named with which the corporation had contracts may have had patents relating to electric time clocks which under the contracts mentioned would have been in use upon clocks connected with its advertising devices, and except that Dowd had made inventions and improvements relating to an advertising apparatus, and comprising a series of motors for moving advertisements or business cards successively into view, the motors being controlled by an electric current in a circuit governed from a main current, and applied to electric clocks which automatically at fixed times revolved a drum in a clock case containing such advertisements or cards, for which inventions and improvements he had applied for letters patent, which applications had been allowed, but the letters patent had not been issued. Dowd had also acquired certain contracts for

the use of sundry electric time wires and systems in connection
with these inventions and improvements, and was ready and
willing to give the corporation a legal title to these improve-
ments, inventions, and contracts, and the $149,650 of stock at
par was issued to him in payment for the improvements and
inventions.

Under the contracts the advertising company was to furnish
electric advertising cases, to be used in connection with the elec-
tric time service of the time companies, in such numbers and at
such places as the time companies might designate, within the
territory for which they were licensed under the patents of the
Telegraphic Time Company of New York, and on receipt of
the cases the time companies were to provide for them the time
devices, make the necessary connections, place them in satis-
factory locations, and operate them as a part of time systems.
Both parties were to solicit advertisements and to share in the
receipts, the time companies granting to the advertising com-
pany the exclusive right, for ten years, to use advertising devices
in connection with their time systems.   The plaintiff also put in
evidence the answers of the defendants to interrogatories, in
which the defendants testified that these inventions and improve-
ments were believed by the defendants to be of great value, as
were also the contracts with the time companies.

No evidence was introduced of any act done by any defendant
except Dowd, save the making and filing of the certificate, to
induce the plaintiff to act upon it.   As to Dowd there was evi-
dence that at an interview with the plaintiff, in which Dowd
explained to him the devices in use by the company, Dowd said
to him, " that they had filed a declaration and were now prepared
to go on and push the business of advertising," and that in con-
sequence of this statement he caused his attorney to examine the
papers of the corporation at the State House, and upon receiving
from him information that the certificate showed that the capital
stock was $150,000 and all paid in, $350 in cash and $149,650
by the transfer to the corporation of patents, he, relying upon
this information, accepted the notes, had them discounted at a
bank, and upon their dishonor had been compelled to take them
up, and had brought suit upon them against the corporation and
been unable to collect anything.

1. Assuming that the statement of Dowd, " that they had filed a declaration and were now prepared to go on and push the business of advertising," referred to the certificate of August 11, 1885, the statement was not of such a nature or made under such circumstances as to justify a finding that it was intended or designedly allowed by him or by the other defendants to influence or deceive the plaintiff into accepting the notes. If he had said in substance or in terms, " If you wish to know the standing of the corporation, it has filed a declaration at the State House, which you can examine," the case might have stood differently, at least as to Dowd. But the subject of the conversation was not the financial standing of the corporation, or the amount of its capital stock, or the manner in which it had been paid in or invested, but the nature and operation of its mechanical devices and the probability of their successful use. The evidence discloses no other reference to the certificate on the part of any of the defendants, and to draw from this incidental mention of the fact that it has been filed, an intention on the part of Dowd or of any of the defendants to induce or allow the plaintiff to be influenced by its statements as to the amount and payment of the stock would be unreasonable. The jury would not therefore have been justified, by all the circumstances which the evidence tended to show, in finding that the defendants intended by means of the representations contained in the certificate to influence the conduct of the plaintiff with reference to his claim against the corporation, and, under the rule laid down in the former opinion, the presiding justice was correct in not allowing this contention of the plaintiff to be passed upon by the jury.

2. It is settled that representations made by officers of a corporation with reference to its financial standing or means are made with reference to the credit or ability of another person within the meaning of the Pub. Sts. c. 78, § 4. *Kimball* v. *Comstock*, 14 Gray, 508. *Wells* v. *Prince*, 15 Gray, 562. *Mann* v. *Blanchard*, 2 Allen, 386. *McKinney* v. *Whiting*, 8 Allen, 207. The plaintiff does not deny the correctness of this proposition, but contends that a statement that another person is possessed of certain specific property does not come within the provisions of the section, and need not be in writing in order to be actionable. We cannot accede to this proposition.

The statute is a general one, purposely broad in its terms, and intended to prevent an understood mischief.   It is to be so construed as to make it effectual to prevent the fraud at which it was aimed.   To exclude from its operation statements as to the ownership of specific property, if made concerning the " credit, ability, trade, or dealings " of another who is said to be the owner of the specific property, would deprive it of force.

The statements of the defendants, except the certificate, were all oral, and all related either to the assets and property of the corporation, or to its prospects of success.   The latter were under no circumstances actionable, being necessarily matters of opinion.   To the former the statute of frauds applies, and prevents the plaintiff from recovering, because they were merely oral and not in writing.                              *Exceptions overruled.*