### EMMA O. STANNARD *vs.* ALBERT J. KINGSBURY.

Middlesex.     March 5, 1901. — May 24, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Frauds, Statute of,* Representations concerning the credit of another. *Evidence,* Materiality, To show damages in action of deceit.

The requirement by Pub. Sts. c. 78, § 4, of a writing, to charge one upon a representation concerning the character or credit of another, applies only when the purpose of the representation is to enable the person recommended to obtain credit, money or goods.

An action can be maintained for oral misrepresentations made by an investment broker concerning the credit of a certain investment association in order to induce the plaintiff to place a sum of money in the defendant's hands for investment.

In an action for false representations of the defendant whereby the plaintiff was induced to place $5,000 in the defendant's hands for investment, it appeared, that the plaintiff intrusted the sum named to the defendant for investment and thereafter received from him certificates purporting to represent shares in an investment association. The plaintiff was allowed to testify that she received $20 in July, $100 in October and $100 the next January on her investment, and nothing more; also that she had endeavored in every manner to realize on her investment, by way of collection, without success. She was also allowed to testify, that thereafter the defendant advised her to employ a New

York lawyer to compel one S. to return to her her money, this evidence being admitted to show an admission by the defendant as to the value of the certificates. *Held*, that, on the question of damages, it was competent for the plaintiff to show what she had paid the defendant and what she had received in return, and that the admission of the defendant was competent on the question of the value of the certificates.

TORT for false representations alleged to have been made by the defendant, an investment broker, to the plaintiff, a woman without knowledge of business, whereby the plaintiff was induced to place $5,000, her whole property, in the hands of the defendant for investment. Writ dated December 15, 1899.

At the trial in the Superior Court, before *Maynard*, J., it appeared, that the plaintiff, in June, 1898, was a single woman residing in Medford, and that the defendant was a dealer and broker in real estate, mortgages and investments, residing in Lowell and having his office in Boston.

The plaintiff testified, on direct examination, that before June 15, 1898, she went to the defendant and told him she had been told he had good investments for money, and asked if he had a safe one for hers. She told him she had $4,500 on a mortgage in Lawrence, which the debtor wished to take up, and she should have the money, and it was all she had ; that some conversation ensued regarding a mortgage on real estate in Reading Highlands into which he thought he could put her money to advantage, but the man must have $5,000 ; that she said she thought, if necessary, she could borrow $500 more, and on his statement that it was necessary, she did borrow the additional $500 ; that later the defendant reported the mortgage was undesirable but said he would let her know of something as soon as possible, and still later sent word that he wished to talk with her about another investment which he considered very good 'indeed, and much better than the mortgage. Subject to the defendant's objection and exception, she was allowed to testify that she called on him about June 15, 1898, when he told her that there was this company, the American Investors Company, but that they formed branch companies through Massachusetts, and that there was one in Boston at that time doing a very good business, which was in charge of a Mr. Burlingame, and that he had one in Lowell which was called the Lowell Rent Purchase Society ; that the Lowell Society had recently been incorporated ; that he had put consid-

erable of his own time into organizing it and was to be its presi-
dent and one of the charter members; that the Lowell Society
was starting well and doing a good business; that it was per-
fectly safe, as safe as the Bank of England; that he had put con-
siderable money into it himself; that he understood the best
men in Lowell were in it; that if she put her money into it, he,
the defendant, would have charge of and be responsible for her
money; and that the money would be invested in a mortgage
in Lowell.

The defendant excepted to the admission of this testimony on
the ground that the representations therein alleged to have been
made were representations made by him concerning the charac-
ter, conduct, credit, ability, trade or dealings of another person
within the meaning of Pub. Sts. c. 78, § 4, with the intent to
enable that person to obtain credit, money or goods by means of
them.

The plaintiff further testified on her direct examination that the
conversation on June 15 ended by her saying that she would
think the matter over and let the defendant know of her decision
later; and that her next meeting with the defendant was on June
22, 1898, when she called at his office and told him she had de-
cided to put her money into his investment.

The plaintiff was allowed, subject to the defendant's objection
and exception, to testify that the defendant at this latter meet-
ing repeated his statement that the investment was safe as the
Bank of England. The defendant excepted to the admission of
this testimony on the ground that it came within the prohibition
of Pub. Sts. c. 78, § 4.

The plaintiff testified that the defendant at this latter meet-
ing, after she had told him of her decision, introduced her to Mr.
Burlingame, in order, as he said, that the latter might explain to
her something about the rate of interest to be paid upon the in-
vestment, concerning which he, Burlingame, was better informed
than the defendant.

The plaintiff was allowed, subject to the defendant's objection
and exception, to testify that Burlingame, in the defendant's
presence, explained to her that there were two ways of investing
her money, one by which she would receive interest at ten per
cent on her money, another by which she would receive six per

cent at compound interest; and that the defendant advised her to invest half her money each way. The defendant excepted to the admission of this testimony on the ground that it came within the prohibition of Pub. Sts. c. 78, § 4.

The plaintiff testified that she gave the defendant her check on that day for $5,000, payable to the order of the defendant, and that before she signed her check she said to him, " Of course I don't know this Mr. Burlingame, he has nothing to do with my money," and the defendant said, " No."

A receipt was introduced which was sent by the defendant to the plaintiff a few days later, which was signed by the defendant and read as follows: " Received of Miss E. O. Stannard five thousand ($5,000) dollars. To be invested in full paid stock of the American Investors Company of New York, as per applications signed and forwarded to N. York this day."

Later the plaintiff received through the defendant fifteen certificates, five for $500 each and ten for $250 each, all purporting to be certificates of the American Investors Company as general agent for the Lowell Rent Purchase Society, Lowell, Mass.

Each of the $500 certificates contained the following statement: " Miss Emma O. Stannard is accepted as a member, and is entitled to a $500 certificate of five shares in the Rent Purchase Fund of the Lowell Rent Purchase Society transferable only on the books of the Society, in person or by attorney, on surrender of this certificate." On the back of each certificate was the following: " The American Investors Company of Providence, Rhode Island, as General Agent for The Lowell Rent Purchase Society of Lowell, Mass. M Emma O. Stannard, 11 Central Avenue, Medford, Mass. R. P. Fund." Then followed a statement of the conditions upon which the certificate was issued. The $250 certificates were substantially in the same form.

The plaintiff was allowed, subject to the defendant's objection and exception, to testify that one day after June 21 she met the defendant again and asked him what had been done with her money, and that he replied it had been placed in a mortgage in Lowell. The defendant excepted to the admission of this testimony, first on the ground that it came within the prohibition of Pub. Sts. c. 78, § 4, and second on the ground that the statement therein alleged to have been made by the defendant was imma-

terial. The judge admitted the evidence as throwing light upon the nature of the original transaction only.

The plaintiff was allowed, subject to the defendant's objection and exception, to testify that she met the defendant again in May, 1899, and told him she had read in the newspapers that the American Investors Company was in trouble; that she asked him if the Lowell Rent Purchase Society would be affected; and he replied it would not, and, if she did not receive her interest in July owing to the trouble, he and Burlingame would feel they should make it up, as it would simply be a temporary trouble from which the American Investors Company would right itself. The defendant excepted to the admission of this testimony on two grounds, first that it was immaterial, second that it was incompetent as bearing upon the value or worthlessness of the certificates. The judge, however, admitted the evidence without making any qualification at the time as to the purposes for which the jury should consider it.

The plaintiff was allowed, subject to the defendant's objection and exception, to testify that the defendant always, both before and after June 22, 1898, told her that he had put money into the Lowell Rent Purchase Society, until at an interview a year or so afterwards he said " she misunderstood him ; that he did n't mean he put money in, put a large amount of money, or put any money in; that he did put a great deal of time and money in that way into it." The defendant excepted to the admission of this evidence on the grounds already stated.

The plaintiff was allowed, subject to the defendant's objection and exception to testify, for the purpose of showing damages, that she received $20 in July, 1898, $100 in October, 1898, and $100 in January, 1899, on her investment and nothing more; also that she had endeavored in every manner to realize on her investment by way of collection without success. The plaintiff was allowed, subject to the defendant's objection and exception, to testify that in April, 1899, the defendant advised her to employ a New York lawyer, who would compel one Stewart, an officer of the American Investors Company, to return her her money. The judge admitted the evidence as tending to show an admission by the defendant as to the value of the certificates.

The plaintiff, on cross-examination, testified that upon receiv-

ing the receipt above mentioned she questioned the defendant why the stock therein specified was not called stock of the Lowell Rent Purchase Society; and that he replied it was merely a matter of form and her money was really in the Lowell Rent Purchase Society.

The defendant introduced in evidence the application signed by the plaintiff addressed to the " American Investors Company, Financial Agents."

The plaintiff, on cross-examination, testified that she could not say whether these papers were all filled out before she signed them, but knew that " Lowell " as the place of signing was not then written there. She admitted her signature, and that she read the papers over before signing them, and that she supposed, at that time, that she understood their contents; but added that, so far as these applications contained any agreement that the American Investors Company should be the financial agent of the Lowell Rent Purchase Society, the defendant told her before she put in her money that he was to be the financial agent. " He said that he would have the charge of my money, because he was the one who had charge of the money put into the Lowell Rent Purchase Society. . . . He would have charge of my money. I said to him, distinctly, I don't know Dr. Willoughby; I don't know anyone else. I knew nothing of the American Investors Company. I never saw Mr. Stewart, he (the defendant) was the one sole one."

It appeared in evidence that the Lowell Rent Purchase Society was never incorporated; but that the American Investors Company, on June 22, 1898, was a corporation under the laws of the State of Rhode Island.

There was evidence that no conveyances of real estate were made to or by the Lowell Rent Purchase Society; and that the only conveyances made to or by the American Investors Company from 1895 to the time of the trial, recorded in the registries of deeds for Middlesex and Suffolk Counties, were a mortgage of property in Lowell, from one Hallowell, father-in-law of the defendant, to the company, made December 20, 1898, and subsequently assigned to G. P. Stewart; and a mortgage of property in Suffolk County, made by Estelle H. Burlingame, wife of E. E. Burlingame, to the company, October 14, 1898, subsequently assigned to Stewart.

There was testimony of the defendant and of Burlingame contradicting the testimony of the plaintiff.

At the close of all the evidence, the defendant requested the judge to rule that on all the evidence in the case the plaintiff was not entitled to recover, because of Pub. Sts. c. 78, § 4, and to direct a verdict for the defendant. The judge refused so to rule, and submitted the case to the jury, and the defendant excepted. The material portions of the judge's charge and the defendant's exceptions thereto are stated in the opinion of the court.

The jury returned a verdict for the plaintiff in the sum of $5,747.50; and the defendant alleged exceptions.

*J. C. Burke,* for the defendant.

*S. J. Elder & W. C. Wait,* for the plaintiff.

LATHROP, J.   While there are many exceptions in this case, most of them depend upon the question whether the Pub. Sts. c. 78, § 4, apply to. the facts which are disclosed by the plaintiff's testimony, or which the jury might have found to be the facts, if they believed the plaintiff's testimony rather than the evidence for the defendant. The statute in question was first passed in this Commonwealth in 1834, and has been in force ever since. St. 1834, c. 182, § 5.   Rev. Sts. c. 74, § 3.   Gen. Sts. c. 105, § 4.   It appears in the Pub. Sts. c. 78, § 4, in these words: " No action shall be brought to charge a person upon or by reason of a representation or assurance made concerning the character, conduct, credit, ability, trade, or dealings of any other person, unless such representation or assurance is made in writing and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The St. of 1834, contained the words " to the intent or purpose that such person may obtain credit, money or goods thereupon."   These words were omitted in the Revised Statutes and the subsequent revisions; but it has always been held that the statute was to be construed as if these words still remained; and that the statute does not apply unless the intent or purpose of the representation is to enable a third person to obtain credit, money or goods by means of it.   *Medbury* v. *Watson,* 6 Met. 246, 249.   *Norton* v. *Huxley,* 13 Gray, 285, 287.   *Belcher* v. *Costello,* 122 Mass. 189.

In the case at bar, the declaration does not proceed upon the ground that the false representations were made to enable the Lowell Rent Purchase Society to obtain the plaintiff's money, but upon the ground that they were made to induce the plaintiff to place the sum of $5,000 in the defendant's hands for investment. This distinction was carefully pointed out by the judge in his charge to the jury; and it was for the jury to say on all the evidence which view was correct.

The case of *Wells* v. *Prince*, 15 Gray, 562, relied upon by the defendant, is distinguishable from the case at bar by the fact that the representations alleged and relied upon in that case were made with the intent of inducing the plaintiffs to make a contract of insurance with a certain insurance company, so that the insurance company might obtain the money of the plaintiffs, as the premium for such insurance.

Another exception to the charge of the judge relates to the misrepresentation concerning the Lowell Rent Purchase Society, to the effect that it had been recently incorporated. It was admitted that there was no such corporation, but there was evidence that it was a voluntary association, though the testimony on this point was very indefinite, and it was a disputed question whether there was any voluntary society on June 22, when the plaintiff paid her money. The judge instructed the jury that the statute applied not only to an individual but to a corporation or to a society; that the statute did not apply to a thing which did not exist. This was repeated in several forms. The judge then said: "But a thing which does not exist, whether it was something represented as a person or a corporation or a society, if such a thing was not in existence, no such person in existence, no such organization in existence, of course it [the statute] cannot apply to it. . . . So that if the jury should find that no such corporation existed as the Lowell Rent Purchase Society, or did not exist at the time that the money was borrowed, an action may be brought to charge the defendant, in spite of this section of the statute, that is, would not preclude an action being brought for it." We are of opinion that taking this portion of the charge as a whole the judge did not intend to use the word "corporation" as meaning exclusively an incorporated body, and that the jury could not have been misled by what was said. If, however,

a different construction is to be adopted, and the word " corpora-
tion " is to be limited to an incorporated body, we are still of
opinion that the defendant has no ground of exception. Accord-
ing to the testimony of the plaintiff the representation was that
the Lowell Society had recently been incorporated. This it was
admitted was false.

The remaining exception relates to the admission of evidence
on the question of damages. The plaintiff was allowed to testify
that she received $20 in July, $100 in October, and $100 the
next January on her investment, and nothing more; also that
she had endeavored in every manner to realize on her invest-
ment, by way of collection, without success. She was also al-
lowed to testify, that in April, 1899, the defendant advised her
to employ a New York lawyer to compel one Stewart to return
to her her money. This evidence was admitted as tending to
show an admission by the defendant as to the value of the
certificates.

There is nothing in the bill of exceptions to show that any
request was made by the defendant in respect to the measure of
damages, or what the ruling of the judge was upon this point,
although the exceptions state at the end of the part of the charge
which is given: " The foregoing is all of the charge which is
material to the issues raised by this bill of exceptions." It must
be assumed therefore that proper instructions were given on this
point. It was clearly competent for the plaintiff to show what
she had paid the defendant, and what she had received in return.
The question of the value of the certificates does not rest alone
upon the evidence objected to, but upon other evidence of admis-
sions of the defendant; and that which was objected to was
competent on the question of value.

*Exceptions overruled.*