OREN P. WALKER *vs.* GEORGE A. RUSSELL & others.

Middlesex.    March 8, 9, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Frauds, Statute of.    Deceit.    Evidence.*

The provision of R. L. c. 74, § 4, requiring a writing signed by the party to be charged, to charge a person upon a representation " concerning the character, conduct, credit, ability, trade or dealings of any other person," applies only to representations made to induce the plaintiff to enter into a transaction which will result in a debt due to the plaintiff from the third person.

Oral false and fraudulent representations as to the financial credit of a corporation made to induce the plaintiff to subscribe for shares of the corporation and pay for them in cash are actionable.   *Wells* v. *Prince,* 15 Gray, 562, distinguished.

In an action for false and fraudulent representations as to the financial credit of a corporation whereby the plaintiff was induced to subscribe for its shares, if it appears that the corporation suffered no accident or disaster between the time of the representations and the filing of a bill in equity against it to foreclose a mortgage on its property and for the appointment of a receiver, the plaintiff properly may be allowed to put in evidence the record of the suit in equity as bearing on the value of the shares.

TORT, for alleged false and fraudulent representations whereby the plaintiff was induced to purchase certain shares of the Basin and Bay State Mining Company, a corporation organized under the laws of the State of Montana and owning a copper mine and smelting works at Basin in that State, which shortly after the purchase of the shares by the plaintiff went into the hands of a receiver.    Writ dated April 11, 1901.

At the trial in the Superior Court before *De Courcy,* J., the jury returned a verdict for the plaintiff in the sum of $10,850 ; and the defendants alleged exceptions, raising the questions stated by the court.

*G. R. Nutter,* (*J. G. Palfrey* with him,) for the defendants.

*C. F. Choate, Jr.,* for the plaintiff.

LORING, J.    This is an action to recover $11,000 paid by the plaintiff to the Basin and Bay State Mining Company, a Montana corporation, for one hundred new shares in its capital stock issued by said corporation to him.    The plaintiff's evidence tended to show that he was induced to subscribe to and pay

for these shares of stock by the following representations which were made by the defendants, to wit: That the corporation owned a gold mine free and clear from all incumbrances; that all bills due from the corporation were paid, and that it "positively owed nothing"; that there was from $60,000 to $65,000 surplus in the treasury; that the corporation paid no salaries except to the men at the works, and no commission for selling shares of the capital stock; and that the company's operations had resulted in a net return of twenty-five per cent and over per ton. There was also evidence that each and all of these representations were false and known by the defendants to be false; that the plaintiff, relying on them, subscribed to and paid for one hundred shares at $110 a share; and finally, that the stock was worthless and the plaintiff's money was wholly lost to him.

The defence set up was that these representations were representations "concerning the character, conduct, credit, ability, trade or dealings" of another person within R. L. c. 74, § 4.

The presiding judge ruled "that the provisions of the Revised Laws, c. 74, § 4, had no application to payments for treasury stock under the circumstances shown by the evidence in the case, and ruled that upon all the evidence, the said provisions of the Revised Laws had no application to the case." The case is here on an exception to that ruling.

We are of opinion that the ruling was right.

The original act (of which R. L. c. 74, § 4, is a re-enactment) is § 5 of St. 1834, c. 182. The other sections of that act have no bearing upon the meaning of § 5, the section now in question. The whole act (including the section in question) was originally taken almost word for word from five of the eight sections of Lord Tenterden's act, 9 Geo. IV. c. 14, passed in 1828. The section in question was taken from § 6 of that act, word for word, with this exception: In the English act the clause succeeding that in substance stated above is "to the intent or purpose that such other person may obtain credit, money, or goods upon." In Massachusetts, St. 1834, c. 182, § 5, the word "thereupon" is substituted for the word "upon," which makes that sentence grammatical. It was pointed out in *Lyde* v. *Barnard*, 1 M. & W. 101, 110, 115, 116, 123, that the corresponding sentence in the English act was not grammatical. The true explanation of

the word "upon" being in the English act was considered in that case, Lord Abinger expressing the opinion that the word "upon" was originally "thereupon," a conclusion which had been adopted in the Massachusetts act two years before.

In determining the effect to be given to this section of Lord Tenterden's act, the most material consideration is the object which Parliament had in its enactment. The object of the enactment was to extend to a defendant in case of an attempt to charge him with the debt of another person by parol evidence of a false representation as to the solvency of that third person, the same protection that is given to him by the fourth section of the statute of frauds (29 Car. II. c. 3), in case of an attempt to charge him with the other's debt by parol testimony of a contract guaranteeing the debt. The occasion for Lord Tenterden's act was the practice introduced by *Pasley* v. *Freeman*, 3 T. R. 51, decided in 1789. In that case it was decided that a defendant could be charged with another's debt if he had fraudulently represented that other to be solvent, and at common law such a representation could be proved by parol. Parliament thought that the danger of injustice from allowing a disappointed creditor to charge a defendant with the debt due him from a third person by parol testimony of a fraudulent representation as to the solvency of that third person was such that this act was passed providing that no such action should be maintained unless the representation was made in writing signed by the party to be charged. See *Lyde* v. *Barnard*, 1 M. & W. 101, 103, 114, 117; *Williams* v. *Mason*, 28 L. T. (N. S.) 232, 233; *Cook* v. *Churchman*, 104 Ind. 141, 148; *Bush* v. *Sprague*, 51 Mich. 41, 47.

To pass to our own act and our own decisions: The typical case which the Legislature had in mind in enacting St. 1834, c. 182, § 5, was where the plaintiff is induced to extend a credit to the third person by representations made by the defendant as to his "character, conduct, credit, ability, trade or dealings." The case where a plaintiff is selling his goods to a third person and is induced to take the note of that third person on time in payment for them, relying on the defendant's representation as to his credit, is an example. *Kimball* v. *Comstock*, 14 Gray, 508. *McKinney* v. *Whiting*, 8 Allen, 207. *Bates* v. *Youngerman*,

142 Mass. 120. See also *Stannard* v. *Kingsbury*, 179 Mass. 174; and see *Haslock* v. *Fergusson*, 7 Ad. & El. 86. The case where the plaintiff is induced by representations of the defendant to indorse the note of a third person for the third person's accommodation, is another example. *Mann* v. *Blanchard*, 2 Allen, 386. *Clydesdale Bank* v. *Paton*, [1896] A. C. 381. In such a case the plaintiff is induced to extend a credit to the third person.

Whether a particular representation is or is not within the statute does not depend alone upon what is said, but depends also upon the purpose for which the representation is made. For example, it was assumed in *Medbury* v. *Watson*, 6 Met. 246, that a representation that a third person had paid $4,000 for a saw mill bought by the plaintiff for $4,000 paid in cash in reliance upon that representation, was not within the statute upon its being decided that no change was made in the effect of the statute when the final clause of the original act was omitted in the re-enactment of it in the Revised Statutes, to wit: "to the intent or purpose that such person may obtain credit, money or goods thereupon." On the other hand a representation that the third person owned a specified piece of property, which is not in form a representation concerning his "character, conduct, credit, ability, trade or dealings," was held to be within the statute when made to induce the plaintiff to accept the note of a third person in place of cash for goods sold to him, if it was "made concerning the credit, ability, trade or dealings of" that other. *Hunnewell* v. *Duxbury*, 157 Mass. 1. *Cook* v. *Churchman*, 104 Ind. 141. It would not be contended that such a representation was within the statute if made with reference to a sale of that property to be paid for in cash.

Representations of fact bearing upon the value of property sold are ordinarily not such that they can be described as representations "concerning the character, conduct, credit, ability, trade or dealings" of a third person who owns the property in question and is undertaking to sell it to the plaintiff. But representations as to the solvency of a third person seeking to obtain a credit from the plaintiff ordinarily would be so described. Sometimes representations as to value are such as to come within the above description. The representations in *Medbury* v. *Wat*-

*son*, namely, that the third person had paid $4,000 for the saw mill he was selling to the plaintiff, fairly could be termed a representation concerning one of the "dealings" of the third person, and the representations in the case at bar fairly could be termed representations concerning "the credit, ability, trade or dealings" of the mining company. But it could not have been the intention of the Legislature to make a distinction between representations made to induce a belief as to the value of property sold for cash, when they happened to take that form, and representations made for that purpose made in the usual form, and to require them to be proved by a writing signed by the party to be charged in the former case and not in the latter.

For these reasons we are of opinion that representations "concerning the character, conduct, ability, trade or dealings of any other person" within R. L. c. 74, § 4, must be limited to representations made to induce the plaintiff to enter into a transaction which will result in a debt due to the plaintiff from the third person; and that representations as to the financial credit of a corporation made to induce a plaintiff to subscribe to the shares of the corporation to be paid for in cash are representations of fact bearing upon the value of the shares and are not representations within R. L. c. 74, § 4.

The contention made here by the defendant probably never would have been put forward had it not been for the terms used in the opinion in *Wells* v. *Prince*, 15 Gray, 562. That was a case where an insurance broker, to induce the plaintiff to take out a policy in the Keystone Insurance Company, falsely represented it to be financially strong. The plaintiff, relying on the representation, took a policy from that company, suffered a loss on the property insured, and was unable to collect the amount due from the company. The result of the transaction in that case between the plaintiff and the third person (the insurance company) was a debt due to the plaintiff, contingent on the property insured being damaged by fire, and for that reason the representation was within the statute. That is a very different thing from a representation of the pecuniary condition of the company to induce the plaintiff to subscribe to and pay for stock to be issued to him by the company. But in the opinion in that case it is said that the representation was within the

statute because made "with the intent of inducing the plaintiffs to make a contract of insurance with the Keystone Insurance Company, and that by means of that contract the insurance company might obtain the money of the plaintiffs, as the premium for such insurance." . This language includes a case where the plaintiff subscribes to and pays for stock to be issued to him by the company. The defendants also rely on the dissenting opinion of Chief Justice Graves in *Bush* v. *Sprague*, 51 Mich. 41 (in which Cooley, J. stated *obiter* that he concurred); on *Hubbard* v. *Long*, 105 Mich. 442, 449, where *Bush* v. *Sprague* is cited with approval; on *Heintz* v. *Mueller*, 19 Ind. App. 240, and to a dictum in *Ball* v. *Farley*, 81 Ala. 288. But after a careful consideration of these cases, we are of opinion, for the reasons already stated, that they should not be followed.

The defendants also took an exception to the admission in evidence of the record of a suit to foreclose a mortgage on the property of the corporation, which was outstanding and in force at the time the representations here complained of were made. In this suit a receiver was appointed. The representations were made in July, 1898, and May, 1899, and the plaintiff subscribed for the one hundred shares in question May 22, 1899. The bill to foreclose was filed in February, 1900. There was evidence "that there was no change in the condition of the company's property, and that it suffered no accident or disaster between the time such representations were made and the time that the suit for the appointment of a receiver was instituted." This made it proper for the presiding judge to admit the record as evidence upon the value of the stock. *Whiting* v. *Price*, 172 Mass. 240.

*Exceptions overruled.*