## MARYLAND CASUALTY CO. v. HOSMER.
### No. 3262.

Circuit Court of Appeals, First Circuit.

Dec. 8, 1937.

David Burstein, of Boston, Mass. (L. E. Green, J. N. Welch, and Hale & Dorr, all of Boston, Mass., on the brief), for appellant.

Robert W. Frost, of Boston, Mass. (Frost & Breath, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action of tort to recover losses sustained by the plaintiff by reason of having become surety on a bond in the name of John F. Kennedy as principal to ensure the completion of a highway construction contract between Kennedy and the commonwealth of Massachusetts.

The allegations of the plaintiff's declaration filed in court with its writ are: That in October, 1931, the defendant, Kennedy, and one Terrell M. Ragan, now deceased, then president of the Boston-Continental National Bank located in Boston, entered into a joint conspiracy for the purpose of inducing the plaintiff to become surety on the bond of Kennedy for the completion of the contract with the commonwealth; that it was well known to both the defendant and Kennedy that it was the custom of all surety companies executing such bonds to require the principal obligor to be a man of substantial means and of good credit and reputation; that said Kennedy at the time of applying for such a bond was a man of no financial responsibility, but that the defendant, Ragan, and Kennedy, pursuant to the said conspiracy, agreed to represent the

said Kennedy to the plaintiff as a person of "substantial personal credit, reputation and means"; that the defendant and Kennedy falsely represented to the plaintiff that said Kennedy's personal financial condition was such that the Boston-Continental National Bank, after investigation, had agreed to extend to Kennedy a "line of credit" up to $50,000 on Kennedy's personal credit to aid him in carrying out the construction contract with the commonwealth of Massachusetts; that the plaintiff inquired of Ragan in regard to the said representations, and Ragan confirmed them and recommended Kennedy as worthy of credit, and also wrote the following letter to the representative of the plaintiff:

"Boston Continental National Bank
"Boston, Massachusetts
"Office of the President    October 29, 1931.
"Maryland Casualty Company, 40 Broad Street, Boston, Massachusetts.
"Attention: Mr. Harry Fagan, Mgr.
"Gentlemen: In line with conversation with you this morning concerning the Kennedy State bid, beg to state in the event it is required for the purpose of completing the job in question, this bank will loan as high as $50,000.00.
"Very truly yours,
"T. M. Ragan, President."

That, relying on the said representations of the defendant that the foregoing statements of Ragan were made in good faith after Ragan had investigated the credit and financial resources of Kennedy, and in reliance on representations as to Kennedy's credit by Ragan and the Boston-Continental National Bank, the plaintiff executed said bond as surety, and Kennedy with the aid of said bond secured the contract with the commonwealth of Massachusetts, but failed to perform certain conditions of said contract, and the plaintiff has been obliged to pay, under the provisions of said bond, the sum of $25,903.45 and costs, and other additional expenses, which it seeks to recover of the defendant by this suit.

■ After the District Court at the close of the evidence had ordered a verdict for the defendant, the plaintiff, realizing that it had not based its claim on fraud, offered an amendment in which fraud on the part of the defendant was alleged in the second count as the ground of recovery, which amendment the District Judge refused to allow. It being a matter within his discretion, no exception lies to his refusal, and

the plaintiff must rely in these proceedings on its original declaration, though much of the argument before this court by plaintiff's counsel is based on fraud as the ground of recovery.

■■ The allegations as to a conspiracy, if one existed, are not the gist of the action, May v. Wood, 172 Mass. 11, 13, 51 N.E. 191, but were made for the purpose of holding the defendant responsible for the acts of his agents or coconspirators, for here the defendant is the sole party charged. New England Foundation Co. v. Reed, 209 Mass. 556, 560, 95 N.E. 935. A conspiracy consists of a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. To prevail upon the plaintiff to execute a bond as surety was not an unlawful purpose.

The essence of the plaintiff's declaration on which it must rely to recover in this action is that the defendant, Ragan, and Kennedy represented to the plaintiff that Kennedy was a man of financial substance, reputation, and means, and entitled to credit to the extent of $50,000; but the evidence fails to disclose any joint intent of, or joint action by, the defendant, Kennedy, and Ragan to represent Kennedy as a man of substantial personal credit and reputation by unlawful means.

■ Any representation as to the financial responsibility of Kennedy and his credit rating, which might result in the plaintiff becoming indebted to other parties, was clearly within the Massachusetts statute of frauds, Gen.Laws (Ter.Ed.) c. 259, § 4; see Mann v. Blanchard, 2 Allen, Mass., 386; Hunnewell v. Duxbury, 157 Mass. 1, 31 N.E. 700; Walker v. Russell, 186 Mass. 69, 73, 71 N.E. 86, 1 Ann.Cas. 688; Cauman v. Biggar, 251 Mass. 91, 146 N.E. 230, which was pleaded by the defendant and reads as follows:

"No action shall be brought to charge a person upon or by reason of a representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance is made in writing and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

■ There is no evidence from which the jury could find that the defendant made any representations in writing to the plaintiff that Kennedy's personal financial sit-

uation was such that the Boston-Continental National Bank, after investigation by Ragan, had extended to Kennedy a line of credit up to $50,000 on Kennedy's personal unsecured credit, or that Ragan had investigated Kennedy's financial condition and had recommended Kennedy as worthy of credit in the amount of the bond. All the defendant did was to state orally that the bank would extend credit to Kennedy to enable him to carry out his contract with the commonwealth to the extent of $50,000, if necessary, which Ragan confirmed.

Ragan's letter to the manager of the plaintiff company contains no recommendation that Kennedy was entitled to credit on his own financial responsibility. It merely contains a statement that the bank, in case it was required by Kennedy in carrying out the construction contract, would loan as high as $50,000. What precautions the bank proposed to take to protect its loan, if and when made, were not at the time made known to the plaintiff, nor did its local manager inquire. Owing to the manner in which payments are made to the contractor on such contracts, it might well be that Kennedy would never require the $50,000 loan from the bank, and on such a contract involving $380,000 there would be more than the bank's loan, even if it advanced the entire $50,000, held back by the commonwealth on such contracts as a final payment.

There is no evidence that the defendant knew such a letter was to be written by Ragan. It was written at the request of the plaintiff. The plaintiff's manager, without inquiring as to Kennedy's financial responsibility, evidently acted upon unwarranted inferences. His declaration, however, falls short of alleging that the defendant in writing gave the plaintiff any assurance or representation, false or otherwise, or authorized any one to do so for him, as to the credit or financial reputation of Kennedy.

The Boston-Continental National Bank was closed by the Comptroller on December 17, 1931, after the bond was executed on November 3, 1931. Kennedy's failure to carry out the conditions of his bond was due to the closing of the bank and the withdrawal of the credit on which he relied. Kennedy, however, completed the job, and it was accepted by the commonwealth.

On a verdict being ordered by the District Judge for the defendant, the issue on appeal is whether there was any evidence on which the jury could have properly found a verdict for the plaintiff, but, under the plaintiff's declaration in the case, we think there was no evidence on which a verdict for the plaintiff could have been sustained.

We, therefore, are of the opinion that the ruling of the District Court in ordering the verdict was right, and the judgment will be:

The judgment of the District Court is affirmed, with costs.