[Civ. No. 11495. Second Appellate District, Division Two.—September 20, 1937.]

J. G. BECKJORD, Appellant, v. SILAS F. SLUSHER et al., Respondents.

John A. Jorgenson for Appellant.

George M. Breslin and Henry G. Bodkin for Respondents.

McCOMB, J.—This is an appeal by plaintiff from a judgment dismissing the action after the trial court, on the ground that no cause of action was stated, sustained an objection to the introduction of any evidence as to the first and second alleged causes of action in the amended complaint. There is also an attempt to review the trial court's ruling in sustaining a demurrer without leave to amend as to the third alleged cause of action in the complaint as amended.

The material facts set forth in the first and second counts, which are substantially identical, are as follows:

## COUNT I.

(1) On May 20, 1931, plaintiff and defendants entered into a written agreement reading as follows:

"THIS AGREEMENT made and entered into this 20th day of May, 1931, by and between J. G. BECKJORD, party of the first part and SILAS F. SLUSHER and MARGARET F. SLUSHER, parties of the second part.

"WITNESSETH:

"That Whereas on or about June 20th, 1927, first party executed and delivered to Jake's Place, Inc., a lease for a period of ten years commencing September 1st, 1927 and ending September 30th, 1937, covering the property known as 3627 Beverly Boulevard, Los Angeles, California, and there is now delinquent under said lease the sum of $550.00 rent for the month of April, 1931, due and payable April 1, 1931; $550.00 rent for the month of May, 1931, due and payable May 1, 1931, and second installment of 1930 real estate taxes against said premises in the sum of $544.62, plus penalties and interest as provided by law, and

"Whereas, first party is desirous of terminating said lease and getting possession of said premises and entering into a new lease with second parties,

"Now Therefore, in consideration of the sum of $1672.17 paid by second parties to first party, the receipt of which

is hereby acknowledged, first party promises and agrees to dismiss at once two actions now pending in the Municipal Court for the collection of such rent and taxes, and immediately serve on Jake's Place, Inc., and sub-tenants, a notice to quit said premises for default in the payment of such rent and taxes in accordance with the statutes in such case made and provided; that in the event said Jake's Place, Inc., and sub-tenants fail to vacate said premises within three days after the service of said notice to quit, first party will commence at once an action in unlawful detainer to obtain possession of said premises, plus triple damages, and will prosecute said action diligently, to final judgment; that upon securing such final judgment first party will have execution issued as soon as authorized, and in the event of securing a money judgment will levy upon the fixtures upon said premises belonging to Jake's Place, Inc., and proceed to sell the same at once and bid thereon in order to purchase the same, up to the amount of first party's judgment, or such additional amount as the parties of the second part shall instruct the party of the first part and reimburse him for; that in the event first party bids in such fixtures on such sale, he will immediately quitclaim the same to second parties without cost; that as soon as first party obtains possession of said premises whether by such unlawful detainer action, notice to quit, or otherwise, he will deliver possession to second parties, and as soon as such possession is delivered the parties hereto will enter into a lease in substantially the same form as executed heretofore between first party and Jake's Place, Inc., providing however, for a term of ten years commencing the 1st day of June, 1931 and ending on the 31st day of May, 1941, at a total rental of $87,000.00, payable at Security-First National Bank of Los Angeles, California, First National office, 7th & Spring Streets, Los Angeles, California, in installments each due and payable in advance on the 1st day of each and every calendar month at the following rate: $500.00 per month for the first year; $550.00 per month for the second year; $650.00 per month for the third year; $750.00 per month during the fourth, fifth, sixth, seventh and eighth years; $900.00 per month during the ninth and tenth years, with an option to renew said lease for an additional period of five years at the rate of $900.00 per month. In addition to such rentals, taxes against said premises are to be paid by said second parties, said lease to

contain a provision that *the same may be assigned by the parties of the second part, provided they produce to the first party a satisfactory assignee thereof, and upon such assignment, approved and consented to by the party of the first part, parties of the second part are to be relieved from all other and further liability to the party of the first part under said lease;* said lease to further contain a provision that portions of said premises may be sublet by the parties of the second part or their assignees without the consent of the party of the first part.

"If, in the event said Jake's Place, Inc., or anyone on its behalf, should pay up all delinquencies and thereby rehabilitate said original lease so as to prevent the parties hereto from consummating this transaction, then this agreement to be null and void, and the sum of $1672.17 shall be returned to the parties of the second part by the party of the first part.

"The party of the first part hereby agrees at the request of the parties of the second part to institute and prosecute any bankruptcy proceedings against said Jake's Place, Inc., as the parties of the second part shall desire, all expenses in connection therewith however, to be paid by the parties of the second part.

"Said party of the first part hereby agrees to assume and pay all expense in connection with such unlawful detainer proceedings and sell all said fixtures as aforesaid.

"Second parties promise to pay rent and taxes in accordance with such proposed lease commencing with June 1, 1931, provided, however, that in the event first party is unable eventually to deliver possession in accordance with the proceedings contemplated hereunder, and Jake's Place, Inc., or someone in their behalf pay rental and taxes under its lease for June 1, 1931 and subsequently so as to rehabilitate their lease, then such payments made by said second parties shall be refunded.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year above written.

"J. G. BECKJORD

"First Party

"SILAS F. SLUSHER

"MARGARET F. SLUSHER

"Second Parties." (Italics ours.)

(2) In June, 1931, a new oral contract was entered into between plaintiff and defendant by which they agreed as follows:

Ben H. Chamberlain and Chauncey W. Chamberlain were to be substituted in lieu of defendants in the lease proposed in exhibit B; when execution issued in said unlawful detainer action and the fixtures, furnishings, and equipment in said market sold pursuant thereto, Chauncey W. Chamberlain should bid the same in and should thereupon rearrange and improve the fixtures, furnishings, and equipment therein and should reopen said market at the earliest possible opportunity; defendants should lend said Chamberlains without security, the sum of $10,000 to rearrange, alter, and improve said fixtures, furnishings and equipment and put said market in what defendants considered proper shape for operation, and defendants should sell and transfer to said Chamberlains all of such fixtures, furnishings, and equipment so rearranged, altered, and improved, without security, and thereafter lend said Chamberlains such additional sums as would enable them to reopen and operate said market; plaintiff should have a chattel mortgage on all such fixtures, furnishings, and equipment as security for the performance of all obligations by said Chamberlains under the proposed lease to be executed by and between plaintiff and said Chamberlains. Defendants further promised plaintiff that they would insure and had insured, said Chamberlains against all loss if they would enter into said transaction, that defendants would under no circumstances ever permit said market to close, but would stand back of said Chamberlains financially and would see to it that said Chamberlains were not in need of funds to open and operate said market, and that, they, defendants, would not permit said market to close, and would see to it that plaintiff would lose nothing whatsoever by said substitution.

(3) Defendants represented to plaintiff that:
- (a) They had known the Chamberlains for a long period of time;
- (b) They lived in the same town as defendants;
- (c) They were well acquainted with the financial responsibility of Ben H. Chamberlain;
- (d) Ben H. Chamberlain was a physician and surgeon with a large practice in Alhambra, and he had

been defendants' family physician for many years;

(e) Said Ben H. Chamberlain had a large amount of property;

(f) Chauncey W. Chamberlain was the son of Dr. Chamberlain;

(g) While said Chauncey W. Chamberlain had no property, he was an employee in a responsible position with a bank in Alhambra;

(h) Said Ben H. Chamberlain was desirous of starting his son aforesaid in some business of his own, and for that reason was about to invest $50,000 in a water-bottling venture of which said Chauncey W. Chamberlain should be the proprietor;

(i) Defendants had induced said Ben H. Chamberlain to hold up such investment pending an investigation of this market, and they had induced said Chamberlains to take over this market instead of going into the bottling venture;

(j) Said Ben H. Chamberlain was financially responsible to carry out the terms of such proposed lease and pay the aggregate rental therein provided of $87,000;

(k) Said Ben H. Chamberlain could, and would, furnish plaintiff a financial statement showing such responsibility;

(l) The only reason defendants wished to substitute said Chamberlains was the fact that they had been having a great deal of trouble with said Jake's Place, Inc., arising out of transactions defendants had had with said corporation, and further troubles might develop if said Jake's Place, Inc., learned that defendants had taken over said market themselves.

(4) Ben H. Chamberlain refused to furnish a financial statement to plaintiff, and defendants thereupon reiterated and promised to perform the representations set forth in paragraph (3), *supra.*

(5) Plaintiff did not know the Chamberlains nor their financial responsibility and relied upon defendants' representations.

(6) The representations and promises made to plaintiff by defendants are false and were known by defendants to be

such and made with the intention of deceiving and defrauding plaintiff.

(7) Ben H. Chamberlain at said time was not a man of "great property", but only had property valued at not to exceed $10,000, and not to exceed $3,000 in money with which to take over, rehabilitate and operate said market, and was relying entirely upon the friendship and professional relations between himself and defendants and the promises of the defendants to loan him all necessary funds to open and operate the market, and on the promises of defendants to see to it that the Chamberlains would lose nothing by entering into said transaction; said Ben H. Chamberlain was not financially responsible to carry out the terms of the lease, and was not able to pay the aggregate rental, and was not financially able to open and carry on a market at all; the true reason defendants wished to substitute for themselves the said Chamberlains was to relieve themselves from all further responsibility on their contract with plaintiff; defendants at no time intended to turn over to said Chamberlains the fitxures, etc., without security, and at no time intended to lend the Chamberlains $10,000, or any further sums, without security; defendants at no time intended to save Chamberlains or plaintiff harmless on account of entering into said transaction, and at no time intended to keep said market open or stand in back of the Chamberlains financially, or to see to it that the market would never close; said Ben H. Chamberlain was not at any time to invest $50,000, or any sum, in a water-bottling venture for his son, and defendants had not induced said Ben H. Chamberlain to hold up said venture pending an investigation of this market, or otherwise, or at all; the defendants at no time intended to lend the Chamberlains such additional sums as would enable them to reopen and operate the market; defendants at no time intended that plaintiff should have a chattel mortgage on said fixtures, etc., as security for the performance of the lease, and defendants at no time intended to see that the Chamberlains were not in need of funds to open and operate the market.

(8) In June, 1931, plaintiff instituted an unlawful detainer action and secured a judgment terminating a lease with Jake's Place, Inc., covering the property described in paragraph (1) *supra*; and, upon execution being issued, the

fixtures in Jake's Place, Inc., were sold to Chauncey W. Chamberlain for $1,050, which sum plaintiff gave to defendants, and pursuant to the oral contract mentioned in paragraph (2), *supra*, plaintiff leased said premises to Ben H. Chamberlain and Chauncey W. Chamberlain for a period of ten years.

(9) The defendants delivered to the Chamberlains all the fixtures on the premises for $9,000 and loaned to said Chamberlains the sum of $7,000.

(10) On or about September 1, 1931, defendants refused to advance to the Chamberlains any additional sums of money and on November 2, 1931, brought suit against said Chamberlains to recover the sum of $7,000 theretofore loaned to them, attaching all of the Chamberlains' property, and, upon a judgment being entered in favor of plaintiff against said Chamberlains, said property was sold to defendants, who removed the same from the leased premises hereinbefore described.

(11) Plaintiff had a chattel mortgage upon the personal property of the Chamberlains located on said leased premises.

These are the questions presented for determination:

*Did the complaint as amended allege a cause of action for:*

*First: Breach of the agreement dated May 20, 1931, set forth in paragraph (1), supra?*

*Second: Breach of the oral agreement entered into by the parties in June, 1931, set forth in paragraph (2), supra?*

*Third: Fraud and deceit?*

*Fourth: Defendants' interference with the performance by the Chamberlains of their lease with plaintiffs dated July, 3, 1931?*

The first question must be answered in the negative. The agreement between plaintiff and defendants dated May 20, 1931, contained this express clause:

"said lease to contain a provision that the same may be assigned by the parties of the second part, provided they produce to the first party a satisfactory assignee thereof, and upon such assignment, approved and consented to by the party of the first part, parties of the second part are to be relieved from all other and further liability to the party of the first part under said lease."

Under the facts alleged in the complaint defendants did obtain parties satisfactory to the plaintiff, who entered into

a lease with plaintiff dated July 3, 1931, and thereby under the very terms of the agreement dated May 20, 1931, between plaintiff and defendants, defendants were relieved from all liability under said agreement to plaintiff.

The second question presented by plaintiff must likewise be answered in the negative. Viewing the allegations most favorable to the plaintiff, the oral agreement provided that defendants would for ten years guarantee that the market located on the leased premises would be kept open and operating. The law is settled that an agreement which by its terms is not to be performed within a year from the making thereof, is invalid, unless the same, or some note or memorandum thereof is in writing and subscribed by the party to be charged or by his agent. (Subsec. 1, sec. 1624, Civ. Code.)

In the present case the agreement was not in writing and obviously could not be performed within the period of a year. It was therefore invalid and unenforceable.

The third question also must be answered in the negative. Viewing the allegations most favorable to plaintiff, the fraudulent conduct of defendants consisted in making intentionally false, oral representations to plaintiff concerning the financial responsibility of the Chamberlains. The law is settled that no evidence is admissible to charge a person upon a representation as to the credit of a third party, unless such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the party to be charged. (Sec. 1974, Code Civ. Proc.)

In the instant case the representations were clearly as to the credit of a third person, and, since they were not in writing, they could not be the basis of a cause of action against defendants. *Carr* v. *Tatum*, 133 Cal. App. 274 [24 Pac. (2d) 195], was a case in which the facts were similar to and the question of law involved identical with that in the instant case, and this court in a well-considered opinion by Mr. Presiding Justice Houser, arrived at the same conclusion as that reached by us.

The fourth question presented by plaintiff must be answered in the negative. There is a total absence of any allegation which would have supported a finding that defendants interfered with the Chamberlains' performing their

lease with the plaintiff. It is simply alleged that defendants failed to abide by a purported agreement between them and the Chamberlains, to which purported agreement plaintiff was not a party and therefore obviously not in a position to bring an action for its breach.

We will not review the alleged errors in sustaining the demurrer without leave to amend as to the third cause of action in the complaint as amended for the reason that no judgment was entered on this order. The law is settled that an appeal does not lie from an order sustaining a demurrer to a complaint and that such ruling will be reviewed only when a judgment has been entered upon the order. (*Doran* v. *Sherman,* 18 Cal. App. (2d) 479 [64 Pac. (2d) 442].)

For the foregoing reasons the judgment is affirmed.

Crail, P. J., and Wood, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 15, 1937.